J. B. BRIDGERS v. M. T. DILL et al.

*Damages—Evidence—Judge's Charge—Landlord and Tenant.*

1. Even if improper evidence is admitted in evidence, the error is cured if the Judge in his charge instructs the jury not to consider it.

2. Where the defendant by repeated and continuing trespasses pulls down the fence around the cultivated field of the plaintiff, whereby the growing crop of the plaintiff is ruined, the measure of damages is not limited to the expense of repairing and replacing the fence, but he may recover the value of the damage done to the crop.

3. Railroad corporations are liable for any damage caused by any improper or wrongful act done by them while building their roads.

4. The provisions of §1943 of *The Code*, only apply to the mode of acquiring title to real estate and getting a right of way, but it has no application to trespasses committed outside of the right of way in building the road, and for such trespasses the corporations are liable in a civil action.

5. While it is true that under the provisions of §1754 of *The Code*, the crops shall be deemed to be vested in the landlord, this is only for his protection, and as against third parties the tenant is entitled to the possession both of the land and crop while it is being cultivated, and he may maintain an action in his own name for any injury thereto.

(*Meares* v. *Wilmington*, 9 Ired., 73; cited and approved. *Roberts* v. *Cole*, 82 N. C., 292; *Sledge* v. *Reid*, 73 N. C., 440; *Holloway* v. *The Railroad*, 85 N. C., 452: *Railroad Co.* v. *Wicker*, 74 N. C., 220; distinguished).

This was a CIVIL ACTION, tried before *Shepherd, Judge*, at Spring Term, 1886, of NORTHAMPTON Superior Court.

In 1882, the plaintiff cultivated a farm in Northampton county, rented by him of Dr. R. H. Stancil, adm'r of S. T. Stancil, dec'd, and this action is brought to recover damages alleged to have been sustained by the wrongful acts of the defendants in unlawfully entering upon said land and pulling down the inclosure around his cultivated field, at different times and from day to day, and continuing to pull it

down as the plaintiff would put it up, by reason whereof cattle entered and destroyed his crop, and prevented him from cultivating the land as he otherwise would have done. The defendants denied the allegations of the complaint, and for a second ground of defence, insisted that the Court had no jurisdiction of the subject-matter, so far as it applied to the Meherrin Valley Railroad Co. and those who entered upon said land as its agents; that there was a misjoinder of parties, and a misjoinder of two causes of action.

This second ground of defence was not relied upon in this Court.

Issues were submitted and the jury, in response thereto, found that the plaintiff was entitled to the possession of the land, as alleged in the complaint; that the defendants, M. T. Dill and the Meherrin Valley Railroad Co., trespassed thereon, and that the damage sustained by reason of such trespass was $650.00.

A summary statement of the evidence is necessary to a proper consideration of the defendants' exceptions.

J. B. Bridgers, the plaintiff, testified that in 1882, he was in possession of the land, which he had rented of Dr. Stancil for seven bales of cotton; that when he rented it, he did not know that a railroad was going to be built through it; that he had 75, 80, or 90 acres of land in cotton, and 50 acres in corn; that up to the 1st of July, he had a very good crop; the defendants did not take the fence down till June; * * * that he would put up the fence and they would pull it down again, and this at places outside of the right of way; the road ran through the corn and cotton field, and that the stock were turned in from both ways, and the hands would go over the fence anywhere; that stock, horses, cows and hogs commenced getting in in June, and continued to increase in number through July, August, &c.; that cotton was so trampled that he could not get hands to pick it out, and he only saved six bales; that they put in no cattle guard till

in November; Dill would pull the fence down outside of the right of way, and leave it down or partially down; that he, witness, objected and forbade their coming from the first. Dill was the general superintendent. Witness said: " They destroyed all but six bales of cotton. The damages were about twenty bales—15 anyhow—fifty acres where I never picked out a pound: value $50 per bale. They damaged me seventy-five barrels of corn: value $4 per barrel." This damage was done off the right of way by trampling down the crops and eating them up. They had a passway to Margarettsville over the field all the time—not over the right of way—kept the fence open and cattle came in: * * * had hogs and sheep in the pasture; could have put a cow pit there with one hand in not a great while, four sills would have done; they were hauling over there and a pit would not have done, but they could have put a gate there. Cow pits at all those places would have cost about $50. When this suit was brought, the rent was not due, and had not been paid; paid Stancil six bales and he released the remainder; saw cattle, hogs and sheep coming through the fence at other places than the right of way. To that portion of the foregoing evidence embraced in quotation marks, the defendant objected. Objections overruled and defendant excepted.

Dr. Stancil, for the plaintiff, testified, that he knew the farm; he (plaintiff) has paid me six bales of cotton; saw the crop at times from July to September; saw stock and sheep there.

Plaintiff said Dill would pull the fence down as fast as he could put it up. * * * Dill came to witness for permission; told him that Bridgers had rented the farm for a year, and that he, witness, did not consider that he had any right, and that he had no objection to his (Dill's) entering and building the road, if he could arrange with Bridgers

thinks Bridgers never paid all the rent; never released any of it, though never expects to get it.

J. R. Johnson and Thomas Mason, witnesses for the plaintiff, testified as to stock, &c., in the field.

The defendant asked the Court to instruct the jury:

I. That upon the evidence, the plaintiff cannot recover.

This was refused, and the defendant excepted.

II. That if the jury believed that Bridgers rented the land from Dr. R. H. Stancil, and has not paid all the rent, then the plaintiff cannot recover.

This was refused, and the defendant excepted.

The Court in its charge as to the damages, told the jury, that they should not consider what the plaintiff might have raised upon the land but for the alleged trespass, and that such evidence was excluded; that they should give damages only for the injury to the crops as they then stood, and then only from the time of the pulling down of the fence up to the time when he could, by reasonable diligence, have replaced the fence and erected sufficient cattle guards.

There was a judgment for the plaintiff, and the defendants appealed.

*Mr. W. H. Day*, for the plaintiff.
*Mr. R. B. Peebles*, for the defendants.

DAVIS, J., (after stating the facts). The exception to the evidence of Bridgers, objected to by defendants, cannot be sustained. The trespass was repeated as often as the plaintiff would put up his fence; it was a continued trespass, and the case is unlike that of *Roberts* v. *Cole*, 82 N. C., 292, where the damages were properly limited to such sum as would repair and put the fence in order, and cover the injury done to the crop, before the plaintiff knew of the trespass. But if the evidence excepted to was at all amenable to the objection that it was speculative and too remote, it was cured

by the charge of the Court. The case of *Sledge* v. *Reid*, 73 N. C., 440, relied upon by counsel for defendants, is distinguishable from this. In that case, which was an action to recover damages for the killing of two mules, it was held that the proximate damage to the plaintiff, was the loss of the mules, and his failure to make a crop was the secondary consequence, resulting from the damage, and was too remote and uncertain; but in this case, the injury to the crop was the direct and proximate damage resulting from the wrong of the defendants in repeatedly pulling down the fence and exposing the crop to the prey of cattle.

It is insisted that the public have an interest in railroads, and the grants of power by the State to build them are for the public benefit, and the right to acquire real estate and rights of way is secured to them by law. This is true, and for all damages necessarily incident to their construction, the statute provides, but they are liable for any damages that may occur to individuals by reason of any improper or wrongful acts done by them. *Meares* v. *The Commissioners of Wilmington*, 9 Ired., 73, and the section of *The Code*, 1943, *et seq.*, relied on by defendants, relate to the mode of acquiring title to real estate, right of way, &c., by railroad corporations, and have no application to this action, which is to recover damages for injury to crops outside and off the right of way; and besides, it is not alleged, nor do the pleadings disclose the fact, that any title or right of way was ever acquired by the defendant, as provided by sections of *The Code* referred to, and the case of *Holloway* v. *University Railroad*, 85 N. C., 452, and *R. & A. Air-Line R. R. Co.* v. *Wicker*, 74 N. C., 220, are not applicable.

The second prayer for instructions to the jury was also properly refused.

In this action, Dr. Stancil was not a necessary party, and the relation between him and the plaintiff did not affect the rights of the plaintiff as against the defendants. While it

is true that under §1754 of *The Code,* the crops shall be deemed and held to be vested in possession of the lessor, this is only for the lessor's protection, and, as against any one except him, the tenant is entitled to the possession of the land and of the crop while it is being cultivated, and may maintain, in his own name, an action for any injury thereto, and for this purpose he is the " real party in interest" within the spirit and meaning of §177 of *The Code.* The remedy given to the landlord by §1754, and the subsequent section providing for the protection of the tenant's rights, make it quite clear that it was intended only by those sections to adjust the rights of the landlord and tenant as between themselves. In this case, the defendants were told by the landlord, Dr. Stancil, that he claimed no interest in the matter, and they must look to Bridgers, the plaintiff, for any arrangements they might wish to make.

There is no error. The judgment of the Superior Court is affirmed.

No error. Affirmed.