STATE v. THOMAS LUNSFORD ET AL.

(Filed 3 January, 1919.)

1. **Appeal and Error—Evidence—Instructions—Harmless Error.**

Error committed by the trial judge in permitting the solicitor to argue to the jury on a trial for larceny, that evidence admitted only for the purpose of impeaching the defendant was substantive evidence, is cured by an instruction that the evidence could only be considered by them for the purpose of impeachment.

2. **Larceny—Evidence—Substantive Evidence—Impeaching Evidence—Trials —Questions for Jury.**

Where the evidence tends to show larceny of a certain amount of money by the uncle of the prosecuting witness, and that another uncle proposed to the defendant to make it up, as it was a family affair, to which no reply was made, but the defendant's uncle procured and paid to the prosecuting witness a part of the amount, the balance being found and restored under circumstances tending to connect the defendant therewith, and that the defendant had agreed that a third person should pay the money back to the prosecuting witness, which plan was not followed: *Held,* under the circumstances of this case there was sufficient circumstantial evidence to connect the defendant with the return of the money by his uncle, and to make it competent as substantive evidence, and also impeaching evidence as it tended to prove an attempt to compound a felony.

INDICTMENT of the defendant and his wife, Nettie, for the larceny and receiving of twenty-two dollars, the property of Will Allmond. The wife, Nettie, was acquitted and the defendant was convicted and appealed from the judgment upon such conviction.

In the early part of 1918, Will Allmond and his brother Vester spent the night at the house of the defendant, who was an uncle of both boys, the defendant and his wife being absent. Will had $34 in a purse which was there in the possession of his brother Vester. The next morning the defendant, Tom Lunsford, came. While he was there, he and Vester counted the money and Tom told Vester to give it to Will, which was done. Tom then returned to Calvin Lunsford's, where he and his wife were nursing a sick child, and Vester Allmond soon after. Will Allmond remained at Tom Lunsford's all of that day. Tom and his wife, Nettie, returned home in the afternoon and Will spent the night with them. Between 10 and 11 o'clock that night Will, who had not been asleep, saw Tom and Nettie Lunsford take the money out of the breast-pocket of his coat, count it, and take all of it except $12. He heard them say, "We will leave him $12." This is the substance of the testimony of the prosecuting witness, Will Allmond.

Allmond got all of his money back, as follows: Eight dollars advanced to Lewis Lunsford by Abernathy, the storekeeper; $10 said to have been found by Jake Lunsford at the fence about his father's place; $3 claimed to have been found by the defendant Tom Lunsford at the woodpile the morning after the alleged theft, and $1 said to have been picked up by the son of the defendant at the branch and turned over to the magistrate, Parker. All this finding of money, except the $3 which Allmond says he saw the defendant drop, was after the arrest of the defendants.

Lewis Lunsford testified in behalf of the defendant, and on cross-examination the State was permitted to show that he tried to get the matter "hushed up," and that he got Mr. Abernathy to return $8 of the money to Allmond, and the defendant excepted.

Both defendant and Lewis testified the defendant knew nothing of the return of the money. The court admitted the evidence for the purpose of impeachment, but did not stop the solicitor, who argued that the return of the $8 was substantive evidence of guilt, although requested to do so, and the defendant excepted.

The court, however, referred to the evidence of the return of the $8 in the charge, and instructed the jury as follows: "I instructed you before, gentlemen, when the evidence was admitted, that it was admitted to show whether there was any bias or feeling, and as to whether they should believe him or not, and to show whether or not he had sufficient interest in the matter to swear falsely, and could not be used as a circumstance against these defendants because they would not be respon-

sible for anything he did, and no circumstance or act or conduct that the uncle did in giving the money back, unless done at their request and for them, could be used as any circumstance against them, and there is no evidence in the case tending to show that he did it at their request."

*Attorney-General Manning and Assistant Attorney-General Nash for State.*

*J. H. McCall and Dillard & Hill for defendant.*

ALLEN, J. If his Honor committed error in failing to stop the solicitor when he argued that the fact that Lewis Lunsford returned $8 to the prosecuting witness was substantive evidence of the guilt of the defendant Tom Lunsford, this error was cured by the subsequent explicit charge to the jury that the evidence could not be considered except for the purpose of impeaching the witness, unless the money was returned at the request of the defendant, and that there was no evidence of such request. *Bridgers v. Dill,* 97 N. C., 222; *S. v. Crane,* 110 N. C., 530; *Wilson v. Mfg. Co.,* 120 N. C., 95; Michie's Dig., V. 1, p. 758.

The evidence itself was clearly competent for the purpose of impeachment, because when considered in connection with the evidence that the witness was trying to settle the matter out of court and prevent a criminal prosecution, it tended to prove an attempt to compound a felony. We are also of opinion it was fit to be considered as substantive evidence of guilt.

It is true Tom and Lewis testified that Tom knew nothing of the return of the money, but their evidence does not conclude the matter. If it did we would have to order the discharge of the defendant because he swore he did not steal the money. There is, however, circumstantial evidence tending to connect the defendant with the return of the $8.

Tom and Lewis are brothers and the prosecuting witness their nephew. There is evidence that the defendant said to the prosecutor some time before the trial, "Make it up," and Lewis said to him in the presence of the defendant a week before the trial, "Go home and let's make it up. It's kinfolks, Let's make it up." This statement of Lewis was apparently acquiesced in by the defendant as he remained silent in the presence of a proposition to "make it up." The defendant testified that Lewis first came to him about making it up, and while he did not agree to do so he did agree to leave it to Mr. Abernathy to pay the prosecutor.

It was also in evidence that one of the sons of the defendant found ten one-dollar bills in a fence corner near defendant's house, that another son found one dollar in a branch near by, and another son found on the ground three one-dollar bills which defendant dropped from his pocket; that these different amounts were returned to the prosecutors, making,

with the $8 paid by Lewis, $22, the amount stolen. This at least justifies the argument that Tom and Lewis were trying to stop the prosecution by the return of the money, and that Lewis was the active agent.

No error.