16633

ALEXANDER *ET AL.* v. SEABOARD AIR LINE R. CO.
(71 S. E. (2d) 299)

478

*Mr. Ralph T. Wilson,* of Laurens, and *Messrs. Grier, Mc-Donald, Todd & Burns,* of Greenwood, *for Appellant,* cite:

*Mr. W. Hummel Harley,* of Laurens, *for Respondents,* cites: *As to evidence of other occurrences being admissible:*

June 4, 1952.

BAKER, Chief Justice.

This was an action of the respondents against the appellant to recover damages for the alleged almost total destruc-

tion of their 1950 cotton crop planted on twelve acres of land near Mountville, in the County of Laurens, and a short distance from the track and right-of-way of the appellant, by the spraying of its right-of-way with a chemical known as 2-4-D, a weed killer, about June 8, 1950.

At the close of the taking of testimony, on motion of the appellant for a direction of verdict in its behalf, the court having granted the motion as to punitive damages, we will omit all allegations in the complaint as to willfulness and wantonness.

Paragraph 4 of the complaint alleges that the destruction of respondents' cotton was directly and proximately caused by the following acts of negligence of the appellant, to wit:

(a) In spraying about in (its?) road bed, in an irresponsible and high-handed manner, a chemical known to the defendant to be destructive to growing plants.

(b) In spraying about its road bed a chemical deadly to growing plants when it knew or should have known that said chemical would drift to fields adjacent to said road bed.

(c) In spraying a chemical deadly to growing plants on a day when high winds were prevalent causing said chemical to cover a wide area.

(d) In operating spraying equipment containing a chemical deadly to growing plants in a careless and negligent manner and in disregard of the property rights of adjacent land owners.

(e) In spraying a chemical deadly to growing plants on its road bed without obtaining proper information of the damage that would result to other property owners.

(f) In negligently invading the property rights of the plaintiff and depositing a deadly chemical on the crops growing in his fields.

(g) In placing said spraying equipment under the control of an incompetent, careless and negligent crew of employees.

It should here be noted that upon the call of the case for trial, the respondent, Willie Richardson, a sharecropper of the respondent, A. F. Alexander, was, without objection, unnecessarily made a party plaintiff.

The answer of the appellant was a general denial except as to its incorporation, and the owning, maintaining and operation of a line of railroad running through Laurens County and through and near Mountville, etc. We now quote from the answer:

"Further answering the complaint and as a defense to plaintiff's alleged cause of action, defendant alleges that if the use of a weed killer commonly called 2-4-D on its road bed at the time and place mentioned in the complaint damaged any crop of plaintiff as alleged (which is expressly denied), the damage to, or destruction of, said crop was not caused or produced in consequence of the act or acts of any of the authorized agents or employees of Defendant, but was caused and produced by the acts of an independent contractor, to wit: the Spray Services, Inc., which, under the contract between the Defendant and Spray Services, Inc., caused its road bed to be sprayed with a weed killer commonly known as 2-4-D, and under said contract, and in spraying Defendant's road bed acted independently and without any control or supervision on the part of the Defendant; and Defendant alleges that any acts of said Spray Services, Inc., in spraying Defendant's road bed and thereby damaging any crop, or crops, of plaintiff on the land described in the complaint herein were the acts of an independent contractor for which it is not liable."

The case having been submitted to the jury as to actual damages, a verdict was rendered against the appellant in the amount of $1,750.00. After the verdict the appellant moved for judgment notwithstanding the verdict or in the alternative for a new trial, which motion was refused.

Within due time the appellant appealed from the rulings, orders and judgment entered on the verdict, and raised the

issues: (1) Error in the admission of testimony, (2) Error in refusing motion for direction of verdict (as to actual damages) and error in refusing appellant's motion for judgment *non obstante,* and (3) Error in the trial Judge's charge to the jury.

There is no dispute in the record that Spray Services, Inc., a W. Virginia corporation, acting under a written contract with the appellant, sprayed its road bed and right-of-way on June 8, 1950, near Mountville, in Laurens County, some distance from the cotton field under discussion, with a weed killer known as 2-4-D; and that the contract between Spray Services, Inc., and the appellant covering this work contained clauses reading as follows:

"Contractor agrees to indemnify and save harmless, the Railroad from all liability, loss, cost and expense arising as a result of injuries to or death of persons (including employees of Contractor and Railroad) or loss or damage to property which may occur as a result or in consequence of the acts, omissions or defaults of the Contractor or its employees in performing the services contemplated herein.

"The Railroad shall indemnify and save harmless the Contractor from and against any and all claims for damages which may arise from accidents resulting from its sole negligence. After the solutions above mentioned have been applied to Railroad's roadbed, Railroad will indemnify and save harmless the Contractor from and against any and all claims, demands or actions brought by third parties growing out of the mere fact of application or use of such poisonous compounds on Railroad's roadbed."

The first general issue, "Error in the admission of testimony," embraces Exceptions 1, 2, 4, 5, 6 and 7, and requires that we discuss them separately.

Exception 1 alleges error in permitting the witness, David Richardson, to testify that he had a field of cotton near the railroad track, about one mile from the field of the respondents, which was badly damaged by "the stuff they were

putting out" (meaning the spraying of the appellant's right-of-way with a chemical). Exception 2 imputes error to the Trial Judge in permitting the witness, C. B. Cannon, to testify on cross-examination as to damage by the chemical 2-4-D, to other fields of cotton at other times and places, not the property of the respondents. The ground of the objections to the testimony of these witnesses was that it was irrelevant, incompetent and prejudicial. The answer of the appellant denied that the growing cotton crop of the respondents had been damaged by the spraying of this 2-4-D chemical on its right-of-way.

The admission or disallowance of proffered testimony is a matter largely in the discretion of the Trial Judge, depending largely upon the purpose for which it is offered. This testimony tended to show that such chemical was very injurious to growing cotton in the vicinity of where it was applied if it floated or was blown over or upon such cotton, and was capable of inflicting the injury complained of by the respondents. The Illinois cases of *Menolascino v. Superior Felt & Bedding Co.,* 313 Ill. App. 557, 40 N. E. (2d) 813, and *Cooper v. Randall,* 59 Ill. 317, are analogous, and support this holding.

Exception 4 imputes error to the lower court in allowing the witness, J. P. Quarles (President of Spray Services, Inc.), on cross-examination to testify that claims had arisen against the appellant out of these spraying operations, and had been paid by the appellant, and not by Spray Services, Inc. And Exceptions 5 and 6 impute error to the lower court in allowing this same witness to testify that E. D. Caldwell, Jr., claim agent of the appellant had told him that the appellant had paid other claims arising out of damage alleged to have been caused by the spraying of its road bed. The grounds of the objections in each instance was that the testimony was irrelevant, incompetent and prejudicial because there was no proof preliminary thereto that the circumstances and conditions were the same or similar to the case at bar, nor was there any testimony as to the time of

other cases. We feel sure that if circumstances and conditions had not been similar, and the time element entered into it, the alert and learned counsel representing the appellant, after talking to this witness, would have recalled him to the witness stand, and reserving their objection to this testimony, would have examined him thereabout. In fact, the record discloses that such right was, in effect, reserved.

If for no other reason, this testimony was competent as tending to show the construction which the appellant placed on its contract with Spray Services, Inc., and in rebuttal to its defense of independent contractor, the theory upon which the case was tried. However, as will hereinafter be seen, the defense of "independent contractor" is not a valid one in a case such as this where a poisonous chemical is used as a spray.

During the argument of counsel to the Court as to the admission of the foregoing testimony, appellant also raised the issue that it was hearsay. If so, and without so deciding, such objection was cured when Caldwell, the claim agent himself testified to having paid a claim for damages to crops in the vicinity of respondents on account of this spraying operation. We quote from the record: "Q. In this particular case arising out of the spraying of this right-of-way near Mr. Alexander's, did you pay on behalf of the Seaboard railroad some claim? (Objected to as irrelevant and incompetent, and involving other issues, other facts. Objection overruled.) A. Yes, I did pay another claim in that vicinity for the reason that these same three men who inspected Mr. Alexander's land inspected the other land that was supposedly damaged by 2-4-D. I had an agreement with the other man that if they said he had any damage, I would pay it. If they said he had no damage, I would not pay, as the case of Mr. Alexander (one of the respondents)." Furthermore, the investigation and settlement of claims such as this was within the scope of the authority of this agent, and therefore excluded from the hearsay rule. It is well settled that an agent of a corporation may testify as to trans-

actions of the corporation within the scope of the business with which he is interested, it matters not that such testimony is adverse to the corporation by which he is employed. And any statement made to others by such agent concerning a matter within the scope of authority is admissible in evidence against his principal. 20 Am. Jur., Evidence, §§ 600 and 601.

What we have already said disposes of appellant's Exception 7, wherein it alleges error by the trial Court in permitting on cross-examination its witness, Mr. Caldwell, to testify as to paying another claim growing out of this spraying, this testimony and the question preceding it having been set out hereinabove.

We will now discuss and pass upon (and out of order) appellant's third issue, before discussing and deciding the second issue.

In appellant's printed brief this issue is stated as follows: "Did the Circuit Judge err in charging the jury as specified in Exceptions Fifteen through Eighteen?" But when we refer to these Exceptions, we find that the error alleged consists in the main of the failure of the trial Judge to construe the contract between appellant and Spray Services, Inc., and in leaving it to the jury to decide, in connection with the other testimony in the case and the exhibits whether Spray Servces, Inc., was an independent contractor. It is also alleged that the charge was inconsistent, contradictory, confusing, misleading, prejudicial, negatived the effect of the admission by the appellant that the work of spraying was done by Spray Services, Inc., was a charge on the facts, and denied the contention of the appellant that Spray Services, Inc., was an independent contractor.

Upon a careful reading of the excerpts from the charge of the trial Judge complained of in the Exceptions, and the charge as a whole, we conclude that the charge was too favorable to the appellant in some instances, and immaterial in others, especially in the light of

our holding hereafter that the owner of premises may not delegate the work of spraying with a poisonous solution for the purpose of killing weeds on his premises to an independent contractor and thus avoid liability for damage to the property of third persons caused by the negligence of the independent contractor in the spraying operation. Therefore, it is immaterial, under the facts of this case, whether Spray Services, Inc., was an independent contractor or a servant.

We now come to the last issue, that is, whether, the Trial Judge erred in refusing the motions of the appellant for a direction of verdict in its behalf, and for judgment *non obstante veredicto,* or in the alternative for a new trial.

There can be no doubt from the record before us but that some of this 2-4-D solution with which the road bed and right-of-way of the appellant was being sprayed came to rest in respondents' field of growing cotton, as one stalk of cotton in the middle of the field admittedly evidenced, but whether this poisonous solution or spray floated or was blown into this field at the time of the spraying or whether it was blown or floated from the appellant's right-of-way after being deposited thereon in an excessive amount is problematical, although the more logical premise would be the former. But if we ignore the other testimony in the record and accept that of Mr. Quarles, under whose supervision the spraying was done, that at the time he sprayed the right-of-way of the appellant opposite respondents' field of cotton there was no wind which could have carried this weed killer to and upon the cotton field under discussion, then it must have been blown there after being deposited on the weeds, etc., growing on the right-of-way. If so, then under the contract introduced in evidence by the appellant, and from which we have quoted, the relationship of independent contractor, if it ever had any potency (which it didn't) as a defense for the appellant, passed from the picture, and the appellant railroad was liable for such damage.

. This is not a case where the appellant did not know, or could not have ascertained upon inquiry that this 2-4-D

spray was very injurious and damaging to plants having broad leaves, and that it would in all probability greatly damage growing cotton if it floated thereon, and therefore does not come within the holding in theArkansas case of *Chapman Chemical Co. v. Taylor,* 215 Ark. 630, 222 S. W. (2d) 820, but, on the other hand, the later decided Arkansas case of *Burns v. Vaughn,* 216 Ark. 128, 224 S. W. (2d) 365, 12 A. L. R. (2d) 433, is apposite, in which case reference is made to the "unusual carrying powers (of 2-4-D chemical dust), as it vaporizes in the air and may travel for miles."

The great weight of authority is in accord with the principle announced by the Arizona Court in *S. A. Gerrard Co. v. Fricker,* 42 Ariz. 503, 27 P. (2d) 678, 680, from which we quote:

"As a general rule the employer is not liable for the negligence of an independent contractor. There are, however, certain exceptions to this general rule. One of such exceptions is that the law will not allow one who has a piece of work to be done that is necessarily or inherently dangerous to escape liability to persons or property negligently injured in its performance by another to whom he has contracted such work. This is especially true where the agency or means employed to do the work, if not confined and carefully guarded, is liable to invade adjacent property, or the property of others, and destroy or damage it. The defendant was within its legal rights in depositing the insecticide on its lettuce field for the purpose of ridding it of the worms with which it was infested, and it could do this work itself or it could contract it, but, because of the very great likelihood of the poisonous dust or spray spreading to adjoining or nearby premises and damaging or destroying valuable property thereon, it could not delegate this work to an independent contractor and thus avoid liability."

Liability cannot be evaded by employing an independent contractor to do work which is inherently or intrinsically dangerous unless proper precautions

are taken. This exception to the general rule was noticed in *Allison v. Ideal Laundry & Cleaners,* 215 S. C. 344, 55 S. E. (2d) 281, 282, and we quote from the opinion in that case:

"However, there is a well established exception to the general rule of non-liability where injury results and the means or manner of the activity of the owner, whether done by independent contractor or not, may be found to be inherently or intrinsically dangerous to others.

"For discussion of the established exception to the rule of non-liability of the employer for acts of negligence of his independent contractor where the work involves inherent or intrinsic danger, see 27 Am. Jur. 517, Independent Contractors, Sec. 39, 57 C. J. S., Master and Servant, § 590, page 359. Annotations: 65 L. R. A. 833; 23 A. L. R. 1084; 76 A. L. R. 1257; A. L. I. Restatement, Torts, Negligence, 1142 *et seq.,* Sec. 423, also p. 1147 *et seq.,* Sec 427. A well considered case is *Davis v. Summerfield,* 133 N. C. 325, 45 S. E. 654, 63 L. R. A. 492.

\* \* \*

"Liability of the employer in such cases depends upon his antecedent knowledge of the danger inherent in the work or a finding that the average, reasonably prudent man or corporation should, in the exercise of due diligence, have known. 'Obviously the determining factor is knowledge, actual or implied, on the part of the employer of the dangerous nature of the work.' *Luthringer v. Moore,* Cal. Sup. [App.] 1947, 181 P. (2d) 89, 98."

There is no question here as to appellant's right-of-way having been sprayed by Spray Services, Inc., with a weed killing chemical in which 2-4-D was the chief component; and that the spraying was done under a contract between said spraying corporation and the appellant. The questions therefore are: Did either the appellant or Spray Services, Inc., know or could they have learned by reasonable inquiry of the injurious effect this 2-4-D chemical would have on growing cotton if it floated thereon from the spraying of ap-

pellant's right-of-way? Was there any testimony from which a reasonable inference could be drawn that it was negligent to operate this spraying machine or tank at the time it was used in the spraying of appellant's right-of-way in the vicinity of respondent's field of cotton? Was there any testimony from which a reasonable inference could be drawn that the respondents' crop failure on this 12 acre field of cotton was caused by the floating of this 2-4-D chemical thereon from the right-of-way of the appellant?

The record discloses that Mr. Quarles, the President of Spray Services, Inc., was at least aware of the probable damage that would result to growing cotton if this chemical floated over on same, and that the spraying tanks of his corporation should not be operated if the wind was blowing and might carry it to fields of cotton; and under our holding here, his knowledge of this fact was imputable to appellant. But aside from this, there does not seem to be any question as to the availability of such information to the appellant.

Willie Richardson, one of the respondents, testified that the first part of June he saw an engine, to which was attached a tank, traveling along the railroad track and spraying something that looked like dust to him; that the wind was blowing pretty high that day; that he couldn't tell from where he was how far the spray threw it (this dust), but he did see that "it was up kind of in the elements like, going through the trees." Later in his testimony this witness referred to what he saw coming out of the spouts on this tank attached to the engine as "fog," and again reiterated that the wind was blowing "pretty hard." When we consider this testimony in connection with the testimony of Mr. Quarles that he knew he shouldn't operate this tank when the wind was blowing (and that he never did), such testimony alone required the trial Judge to submit to the jury the issue of negligence in the application of this chemical at the time to the right-of-way of appellant.

A 2-4-D chemical was not used in the vicinity of the subject field of cotton except in the spraying of the right-of-way of the appellant. Three or four days after such spraying a decided change in this field of cotton became evident. Upon investigation by two witnesses, but at separate times, they were able to trace the effect of this chemical by dead sassafras bushes from the railroad to the field of cotton. The cotton stalk and the leaves showed the first sign of damage. The cotton plant resembled okra. The leaves gradually came to a point and more or less shriveled up and the squares became pointed and long, and later shriveled. One of the witnesses who saw the spraying on the right-of-way of the railroad and who described it as "putting out something just kind of like fog," testified that he was a day laborer and worked in this field of cotton from time to time that he noticed something unusual about this field of cotton within a few days following the spraying of the railroad right-of-way. In describing this cotton, this witness stated among other things, as follows: "Well, it wasn't like cotton. It was just all indifferent. I knowed there was something wrong with the cotton  *  *  *." "Well, hit was just all out of shape. Wasn't like cotton I been see grow. I been growing cotton all of my life." "It was all out of shape and there was little squares was there to be bolls of cotton. They was parched and burned. Nothing to do about the crop down there." Mr. B. O. Watts who owned a tractor sprayer, and for hire sprayed growing cotton to kill boll weevils, refused to take his sprayer into this field after learning that the trouble with this cotton was that some of the chemical 2-4-D had floated therein. The evidence on behalf of the respondents further showed that for the four years preceding 1950, there was grown on this 12 acre field ten to twelve bales of cotton each year, whereas for 1950, the whole field produced only one bale.

It was the contention of the appellant, and strong testimony supporting such contention was produced, that there was only faint evidence of the chemical 2-4-D coming in

contact with this growing cotton, except as to one stalk in the center of the field, and that boll weevils destroyed the crop, rather than any damage from said chemical—in fact that there was no damage from this chemical except as to one stalk of cotton.

However, there was ample testimony from which a reasonable inference could be drawn that the crop failure in this field of cotton was attributable to the effects of this 2-4-D chemical, and such issue was properly submitted to the jury.

We have passed upon all of the Exceptions argued, and under the applicable law, find them without merit.

Under Section 8 of Rule 4, of the Rules of The Supreme Court, in which "this Court reserves the right to sustain any ruling, order or judgment upon any grounds appearing in the record", the judgment appealed from is affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.