E. L. BIVINS AND WIFE, IMOGENE BIVINS, v. SOUTHERN RAILWAY COMPANY, A CORPORATION.

(Filed 26 February, 1958.)

1. **Railroads § 7: Principal and Agent § 13d—**

   Admissions and proof that chemicals poisonous to certain types of vegetation were sprayed by a crew operating from a train moving slowly over defendant's tracks, make out a *prima facie* case that the crew operating the sprayers were agents or employees of the railroad company. If such persons were unauthorized, this fact would be peculiarly within the knowledge of the railroad company, and it would be under obligation to so allege and prove.

2. **Railroads § 15: Easements § 5—**

   A right of way for railroad does not deprive the owner or his tenant of the use of the land for any purpose not inconsistent with its use for railroad purposes.

3. **Railroads § 7—**

   Where plaintiff's testimony is positive that at least some of the crops damaged by chemicals sprayed from defendant's right of way were on land rented by him, the fact that there is some conflict in his testimony as to whether all the damage was outside the right of way, cannot justify nonsuit.

4. **Same: Trial § 31b—**

   Where a railroad company alone is sued for the negligent use of poisonous spray on its right of way, and plaintiff makes out a *prima facie* case of liability by showing that the crew doing the spraying operated from a train moving along defendant's tracks, the court is not required to charge that the burden is on plaintiff to show that the persons operating the sprayers were agents or servants of the railroad company, since if such persons were unauthorized, lack of authority should be alleged and proved by the railroad company.

5. **Appeal and Error § 1—**

A party cannot contest the case on one theory and later upset the trial by switching to another theory on the appeal.

APPEAL by defendant from *Campbell, J.,* September-October, 1957 Term, McDOWELL Superior Court.

Civil action for damages to plaintiffs' garden, fruit trees, and pasture alleged to have resulted from the negligent use of poisonous chemicals by the defendant in clearing its right of way, in that:

"(a) It loosed a dangerous, poisonous and noxious chemical into the air knowing that said chemical would kill or injure vegetation with which it came in contact.

"(c) It loosed said chemical into the air at a time when a breeze caused said chemicals to be blown and carried from defendant's railroad tracks over onto the plaintiffs' land and onto the plaintiffs' vegetation and trees."

The defendant, by answer, admitted its corporate existence and, in addition, the following: ". . . the defendant admits it operates a railroad over a right of way . . . from Old Fort . . . to Asheville . . . the defendant admits that the plaintiffs reside upon certain lands . . . adjacent to defendant's right of way and that they carry on upon said lands certain farming and gardening operations . . ., the defendant admits that the chemicals which were sprayed along its right of way, at or about the time mentioned in the plaintiffs' complaint, will kill certain types of vegetation upon contact . . . the defendant admits that the chemical solution which was sprayed along its right of way was intended to kill certain vegetation growing upon said right of way."

Other material allegations of the complaint were denied.

The plaintiff, E. L. Bivins, testified: "The Southern Railroad Company track passes somewhere close to my home. I have got 79 acres rented and the most of my damage is on the right of way. The Southern Railroad track runs along the south part of the boundary . . . No, I did not plant my crops without knowing for sure whether they were on the right of way. I know they are not on the right of way. . . . I rent it for a two-year period. My last period of occupancy ran from this summer to the last of next winter. . . . My family has been there since 1942. . . . I have had a similar arrangement all of the time I have been there. * * *

"I was on my place on the 3rd of August, 1956, and I saw a train come along the Southern Railroad tracks. It came along around noon and was spraying along the north side of the track. They had tank cars which were pulled by a railroad engine . . . an engine and four tank cars. . . . About the train, I

observed these men with hose and nozzles were spraying along the railroad right of way, and we had a tremendous amount of wind, and the stuff just kept going, the spray, that is, just kept drifting, and it was flying everywhere . . . I couldn't say definitely how many men there were . . . Some men were squirting on different trees. Those nozzles are kind of like a fire engine, you can cut them down to a solid stream or just a wide stream. Some were spraying wide and some straight . . . and the stuff was hitting me in the face. . . . I was standing approximately 300 feet from the railroad tracks . . . The reasonable market value of the crops was around $3,000 . . . after the spraying they were not worth anything, you couldn't consume the fruits for food, . . ."

The defendant offered evidence as to the damage to the plaintiffs' crops. It also offered Section 29 of Chapter 228, Private Laws of 1854-1855 (the charter of the Western North Carolina Railroad Company) which provided: ". . . in the absence of any contract . . . in relation to lands through which said road may pass, it shall be presumed that the land over which said road may be constructed, together with 100 feet on each side thereof, was granted by the owner or owners to the company, . . . to have, hold, and enjoy the same so long as it shall be used for the purposes of said road and no longer." The defendant offered a deed made under court order, conveying the rights of the Western North Carolina Railroad in all railroad property to the defendant.

The defendant made timely motions for nonsuit and excepted to the court's refusal to grant them. The jury answered the issues of negligence and damages in favor of the plaintiff and, from judgment on the verdict, the defendant appealed.

*E. C. Carnes for plaintiffs appellees.*

*W. T. Joyner and Proctor & Dameron for defendant appellant.*

HIGGINS, J. The defendant's appeal presents two questions: (1) Was the evidence sufficient to repel the motion for nonsuit? (2) Did the court commit error by failing to explain "the legal doctrine of respondeat superior?" The answer to the first question will provide at least a partial answer to the second.

The defendant urgently contends "there is no evidence the men doing the spraying were agents or servants of the defendant," and that the court should have sustained the demurrer to the evidence on that ground, or at least should have charged that the burden was on the plaintiff to satisfy the jury the spraying (which caused the damage) was carried on by the agents of the defendant.

Paragraph six of the complaint alleges "That on the 3rd day of August, 1956, defendant's agents and employees sprayed a dangerous, poisonous, and noxious chemical . . . along the defendant's right of way which passes by the land on which plaintiffs reside." Notwithstanding the categorical denial of the paragraph, other parts of the defendant's answer contain the following: ". . . the defendant admits that it operates a railroad over a right of way from . . . Old Fort in McDowell County . . . to Asheville in Buncombe County, . . . and that plaintiffs reside on certain lands . . . adjacent to the said right of way . . . and that they carry on upon said lands certain farming and gardening operations. . . . the defendant admits that the chemicals *which were sprayed along its right of way, at about the time mentioned in the plaintiffs' complaint, will kill certain types of vegetation on contact . . . and that the solution . . . was intended to kill certain vegetation growing upon said right of way."* (emphasis added)

The allegations and admissions in the pleadings, together with the undisputed evidence in the case, disclosed the following: On August 3, 1956, a train consisting of a locomotive and four tank cars moved slowly over the defendant's track near Old Fort, North Carolina. A number of men from the train sprayed chemicals along the defendant's right of way for the purpose of killing vegetation thereon. The spray was carried by the wind to plaintiffs' crops, causing the damage complained of.

May the defendant successfully contend the plaintiffs' case must be dismissed because the men who did the spraying from the tank cars were not shown to be the defendant's agents? The defendant was under the duty of maintaining its right of way. *Gainey v. R. R.,* 235 N.C. 114, 68 S.E. 2d 780; *Betts v. R. R.,* 230 N. C. 609, 55 S.E. 2d 76. Ostensibly, this duty was being performed by spraying chemicals from a train operated over defendant's line. Proof that damage resulted from the negligent operation of a train over defendant's track entitles the plaintiffs to go to the jury. The rule is stated in 22 Am. Jur., Sec. 80, p. 646: "But a more accurate expression of the rule, in the light of the authorities, is believed to be that when the plaintiff proves that sparks from a railroad locomotive set fire to his property, a *prima facie* case is presented, and it then devolves upon the railroad to rebut such *prima facie* case, and unless it does rebut the plaintiff's case, the plaintiff is entitled to recover without further proof." To the same effect is *Fleming v. R. R.* 236 N.C. 568, 73 S.E. 2d 544.

Justice Allen stated the rule: "It lies with the defendant to show that the person in charge was not his servant, leaving him to show, if he can, that the property was not under his control

at the time, and that the accident was occasioned by the fault of a stranger, an independent contractor or other person, for whose negligence the owner would not be answerable. 1 Sherm. & Redf., Negligence, 71. Any other rule, especially where persons are dealing with corporations, which can act only through agents and servants, would render it almost impossible for a plaintiff to recover for injuries sustained by defective machinery or negligent use of machinery." *Sutton v. Lyons,* 156 N.C. 3, 72 S.E. 4.

"It has never been held, to our knowledge, otherwise than that, if an engine and cars are being used on the road of a company, the presumption is that they are being controlled by such company. We believe it universally understood that a railroad company that is in control and operating a particular railroad is controlling and operating it to the exclusion of all other railroads or persons. . . . There was no pretense but what the defendant was in the exclusive possession of the railroad in question, and the presumption would necessarily follow that an engine and cars found passing over its tracks were under its operation and control." *Brooks v. Missouri Pac. Ry. Co.,* 71 S.W. (Mos) 1083.

"It has also been held that where it is admitted that a certain company owns a railroad the presumption arises, in the absence of anything to the contrary, that it is operated by such company. . . ." Elliott on Railroads, 3rd Ed., Sec. 2712, p. 660, citing numerous cases.

Manifestly, if the spraying operations complained of in this case were carried on by persons without the defendant's authority, such would be within the knowledge of the defendant, and it would be under obligation so to allege and to prove. "If there is anything, then, that relieves the defendant of this liability, it is, under the ordinary rule of law, incumbent upon it to so allege and prove, as this is entirely defensive matter." *Embler v. Lumber Co.,* 167 N.C. 457, 83 S.E. 740.

In the recent case of *Alexander v. Seaboard Railway,* 221 S.C. 477, 71 S.E. 2d 299, the Supreme Court of South Carolina had before it a case not unlike this. The plaintiff claimed damage caused by deadly chemicals used by the railroad in clearing its right of way. After entering a general denial, the defendant set up the further defense that the spraying was done by an independent contractor. The court held that the evidence was sufficient to go to the jury and to sustain the verdict; and, further, that "Liability cannot be evaded by employing an independent contractor to do work which is inherently . . . dangerous unless proper precautions are taken."

It may be noted that the liability of an independent contractor is neither presented nor decided here. The case is cited on the question of the sufficiency of the evidence to go to the jury.

The controversial matters in the trial of this case below involved (1) the issue of actionable negligence, and (2) the amount of plaintiffs' damage.

The plaintiff, E. L. Bivins, testified the damaged crops were upon land he occupied and cultivated as a tenant for a cash rental. There was some conflict in his testimony as to whether all the damage was outside the right of way.

The defendant contended its right of way extended 100 feet on either side of the track and offered as proof Section 29 of Chapter 228, Private Laws of 1854-55 (the charter of the Western North Carolina Railroad). It also offered evidence that the present defendant had succeeded to the rights of the Western North Carolina. The charter provided, among other things, that in the absence of contract, deed, or condemnation, the right of way should be presumed to extend 100 feet on either side of the track. However, this right of way was an easement for railroad purposes and did not deprive the owner or his tenant of the use of the right of way for purposes not inconsistent with its use for railroad purposes. *Railroad v. Mfg. Co.*, 229 N.C. 695, 51 S.E. 2d 301; *Railroad v. Lissenbee*, 219 N.C. 318, 13 S.E. 2d 561; *Tighe v. R. R.*, 176 N.C. 239, 97 S.E. 164; *Bridgers v. Dill*, 97 N.C. 222, 1 S.E. 767. In the absence of a showing that the crops cultivated by the plaintiffs in some way interfered with the use of the right of way for railroad purposes, the plaintiffs would perhaps be entitled to recover for them. However, the court charged the jury that the plaintiffs could recover only such damage as the jury found by the greater weight of the evidence had been caused to the crops outside and beyond the right of way by the actionable negligence of the defendant. The court squarely placed upon the plaintiffs the obligation of showing actionable negligence on the part of the defendant and the resulting damage to plaintiffs' crops beyond the railroad right of way. In its charge the court recited the contentions of the parties with respect to the right of way, negligence of the defendant, proximate cause, and measure of damages.

The defendant's assignment of error No. 4 raises the question whether the court committed error in failing to charge that the burden was on the plaintiffs to show the men spraying the chemicals from the railroad cars were the agents and servants of the defendant. The defendant relies on the case of *Robinson v. Transportation Co.*, 214 N.C. 489, 199 S.E. 725, as authority for its position. In the Robinson case, both Thomas, the driver, and the transportation company, the owner, were sued.

The owner denied that Thomas, at the time of the accident, was its agent or was engaged in its business. This Court held for error the failure to charge that the burden was on the plaintiff to show both that Thomas was negligent and that at the time of the negligent act he was acting as the agent and servant of the transportation company.

In the instant case, the railroad company alone is sued for damages caused by the negligent use of poisonous spray on its right of way. The company would be liable if any of its agents negligently caused damage. The defendant's admission that the spraying was intended to kill vegetation on its right of way, and the undisputed evidence that the poisonous spray came from a train on its tracks, placed on the defendant the burden of showing the men on the tank cars with spraying apparatus in their hands were not, in fact, its employees. Otherwise the plaintiffs' cause would fail unless they could run down, and identify, and prove the agency of the men who did the spraying. If unauthorized persons were operating a train over the defendant's track and spraying its right of way, the facts would be within the peculiar knowledge of the railroad. If conduct so unusual and contrary to experience is relied on as a defense, it should be alleged and proved. Elliott on Railroads, *supra; Brooks v. Railroad, supra;* Sherman and Redfern on Negligence, *supra; Fleming v. R. R., supra; Sutton v. Lyons, supra; Embler v. Lumber Co., supra.*

The theory on which the case was tried as shown by the pleadings, the evidence, the contentions of the parties, gathered from the court's charge, to which there was no objection, shows the identity of the men who did the spraying and their agency were not issuable facts in the trial. The defendant cannot contest the case on one theory and later upset the trial by switching to another theory on the appeal. *Waddell v. Carson,* 245 N.C. 669, 97 S.E. 2d 222; *Crowell v. Air Lines,* 240 N.C. 20, 81 S.E. 2d 178; *Parrish v. Bryant,* 237 N.C. 256, 74 S.E. 2d 726.

The evidence was sufficient to go to the jury and to sustain the verdict. The charge properly placed upon the plaintiffs the burden of showing the defendant's actionable negligence and resulting damage. Nothing more was required. Cause to disturb the verdict and judgment does not appear.

No error.