MARSH & MARSH, APPELLEE, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, APPELLANT.

FILED JULY 2, 1919. No. 20472.

1. **Carriers:** INTERSTATE SHIPMENTS: DELAY: LIABILITY. When a railroad company contracts to deliver goods at a certain place of business in another state, and is compelled to transfer them to another railroad for delivery, it is liable for damages for delay in delivery the same as if the delay had occurred on its own line.

2. ————: CLAIMS: ATTORNEY'S FEES. The attorney fees provided for in section 6063, Rev. St. 1913, are in the nature of costs, and may be allowed in all cases provided for in that section.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Affirmed.*

*Wymer Dressler* and *C. H. Gorman,* for appellant.

*John H. Grossmann* and *Baker & Ready, contra.*

ALDRICH, J.

This is an action at law brought by plaintiff, a produce dealer of Omaha, to recover $147.61 as damages to a carload of cheese shipped from Plymouth, Wisconsin, Davis Brothers Cream Company, on June 13, 1914, and consigned to the plaintiff at Omaha.

The plaintiff's place of business at Omaha is at the corner of Twelfth and Jones streets, where it uses the warehouse and cold storage plant of the Fairmont Creamery Company. The defendant railroad company entered into a contract with plaintiff to deliver these goods. The car arrived over the defendant's lines on the morning of June 17, at 2:30 A. M., and the record discloses that it was examined and found in good condition.

The defendant company recognized this car was to be delivered at the warehouse, and finally caused it to be switched over there. The Union Pacific Railroad tracks alone accommodated the Fairmont Creamery warehouse, but there was a delay in getting this car over to the warehouse, and it was during this delay that the damage complained of was caused. The weather at the time of this shipment was very hot, and the ice getting out of the car left the cheese subject to the hot weather without ice during the three or four days that it lay in the Omaha yards, thus causing the damage complained of. The defendant claims that, when it delivered the car to the Union Pacific, its liability ceased, and that whatever damage resulted it was not responsible for. The plaintiff insists that the defendant contracted to deliver the car to plaintiff's warehouse, and that it procured the services of the Union Pacific Railroad Company to so place the car there, and paid for its services. It is claimed that the defendant delivered the car to the Union Pacific Railroad Company according to the usual method and custom employed in delivering shipments to connecting carriers, and the record shows that upon arrival the car was ordered delivered to the Fairmount Creamery Company, and it is also a matter of record that the car was transferred to the Union Pacific. These in the main are the facts at issue in this case. The plaintiff alleges two grounds for recovery in the issues hereby tendered: "(1) Negligence of the defendant company in its transportation of the car with knowledge of its perishable contents, and before final delivery of the car to the plain-

tiff. (2) Its acknowledgement of liability upon an inspection of the car, and its agreement to pay the loss when ascertained.''

The defendant admitted the receipt on June 13, 1914, of the car at Plymouth, Wisconsin, consigned to the plaintiff, and denied all its charges of negligence, and alleged the defendant transported the shipment to Omaha strictly in accordance with its instructions, and claimed further that the car arrived in Omaha on the 17th of June, 1914, at 2:30 A. M., and that the plaintiff was duly notified of the arrival of the car, and that at plaintiff's special instance and request the defendant delivered the car to the Union Pacific Railroad Company, and had it switched to the warehouse of the Fairmont Creamery Company by the Union Pacific Railroad Company, that the former should notify the latter of all cars to be switched to it for unloading, and that the Union Pacific Railroad Company did switch this car to the Fairmont Creamery Company, which plaintiff used for unloading, promptly upon receipt of notice to do so. The case was tried on these issues, and the jury rendered a verdict in favor of the plaintiff for the sum of $181.62.

The plaintiff also requested allowance of an attorney's fee, and the record discloses that there was allowed the sum of $75 for this purpose. From this situation, or state of facts, the defendant appeals. There are two issues to be determined: (1) Was the defendant negligent or responsible for the delay caused in the delivery, under the Nebraska statute, of these goods to the plaintiff herein? and (2) is defendant liable for an attorney's fee?

This was an interstate shipment under the following described bill of lading: ''Received  *  *  *  at Plymouth, Wisconsin, June 13, 1914, from the Davis Brothers Cheese Company, the property described below in apparent good order, except as noted (contents and condition of contents of packages unknown)  *  *  * which said company agrees to carry to its usual place of delivery at said destination consigned to Marsh & Marsh, destination Omaha, State of Nebraska.''

It will be noted from the above that the plaintiff and defendant entered into a contract whereby the defendant was to deliver this car to the usual place of delivery at its destination to Marsh & Marsh. It is admitted that the defendant had made many shipments over its lines of railway, and that it was familiar with plaintiff's warehouse in Omaha, and that this was the place of delivery and the destination of the car; and it also knew that the only way for the car to reach its destination was, upon its arrival over its tracks, to employ a Union Pacific engine to deliver it to Marsh & Marsh's warehouse. On June 16, 1914, at 5:45 p. m., the record shows that plaintiff gave to defendant's freight house at Omaha an order as follows: "On arrival of D. L. & W. 6249, cheese consigned to Marsh & Marsh, set to Union Pacific for Fairmont Creamery." Thus it is plain the defendant recognized its obligation and responsibility to deliver the car of cheese to the plaintiff's place of business, and that the damage that occurred to the cheese occurred after its arrival in the Omaha railway yards; and, as the defendant was under contract to deliver this merchandise to the plaintiff at its place of business, then it must follow that whatever damage occurred to the merchandise resulted through the negligence of the defendant. When the defendant entered into a contract to deliver this car and its contents to Marsh & Marsh at the usual place of business in Omaha, it also contracted to deliver it at the place where it usually has its merchandise delivered, and the defendant was cognizant of it, and it appears undisputed in the record that they were familiar with the defendant's location, and to carry out the terms and conditions of their contract they employed the Union Pacific Railroad Company to deliver the alleged damaged cheese to plaintiff's warehouse, and paid them for the service so rendered. It is undisputed also that the defendant was the initial carrier from a point in Wisconsin to a point at plaintiff's warehouse in Omaha, on the Union Pacific tracks, and procured the services of the Union

Pacific company to deliver the car at the Fairmont Creamery Company's warehouse. It was carrying out in detail its written contract already entered into with plaintiff. Then if upon the arrival of the car the cheese therein was in good condition, and upon its receipt at the warehouse, a few days later, it was damaged, and in an unsalable condition, it must follow that whatever damage resulted after the car's arrival in Omaha the defendant is liable for.

It also appears the defendant examined the condition of this car and agreed to settle for all damages. We have examined the instructions, and it would seem that the defendant has no cause of complaint as to any of them, because they were favorable to the issues of the defendant.

Complaint is also made that the allowance by the court of an attorney's fee of $75 is wrong, and should not be permitted to stand. The record shows that this was an interstate shipment; that the shipment began in Wisconsin and ended in Omaha. We suppose this claim was allowed under section 6063, Rev. St. 1913. The provision of this statute, so far as it applies here, is as follows: "In the event such claim, which shall have been filed as above provided within ninety days from the date of the delivery of the freight in regard to which damages are claimed, is not adjusted and paid within the time herein limited, such common carrier shall be liable for interest thereon at 7 per cent. per annum from the date of filing of such claim, and shall also be liable for a reasonable attorney's fee to be fixed by the court." Seven per cent. is the legal rate of interest in this state in the absence of contract. The court named $75 as an attorney's fee. The amount is not exorbitant or unreasonable, but the serious question is: Can this statute above quoted be made applicable to an interstate shipment?

The statute under consideration provides for the allowance of attorney's fees in all cases where claims for loss or damage for which a common carrier may be

liable shall not be adjusted and paid within a fixed period. By this statute no attempt is made to regulate interstate commerce. Neither is the imposition of attorney's fees to be considered as a penalty; rather it is to be considered as a part of the costs incurred in the action, although not so denominated in the statute. The allowance is clearly in the nature of costs. It is not a fixed sum to be recovered as a part of the judgment, but its amount is to be fixed by the court. *Smith v. Chicago, St. P., M. & O. R. Co.*, 99 Neb. 719. As was said by Mr. Justice Pitney in *Missouri, K. & T. R. Co. v. Cade*, 233 U. S. 642: "Manifestly, the purpose is merely to require the defendant to reimburse the plaintiff for a part of his expenses not otherwise recoverable as 'costs of suit.' So far as it goes, it imposes only compensatory damages upon a defendant who, in the judgment of the legislature, unreasonably delays and resists payment of a just demand. The outlay for an attorney's fee is a necessary consequence of the litigation, and since it must fall upon one party or the other, it is reasonable to impose it upon the party whose refusal to pay a just claim renders the litigation necessary. The allowance of ordinary costs of suit to the prevailing party rests upon the same principle." Taking this view of the matter, the case of *Charleston & W. C. R. Co. v. Varnville Furniture Co.*, 237 U. S. 597, cited by appellant, is not applicable.

The judgment of the district court must be

AFFIRMED.

MORRISSEY, C. J., not sitting.

SEDGWICK, J., concurring.

The defendant received this property for shipment from a point in Wisconsin to Omaha. When it arrived in Omaha, it remained at defendant's station and yards several days, which delay in delivery caused the damage complained of.

1. The first question presented is whether the defendant had undertaken to deliver the goods to the con-

signee at its place of business in Omaha, and so was liable for damage caused by the failure of prompt delivery. It appears that similar shipments had been made to this plaintiff and had been delivered at the plaintiff's place of business, which was done by transfer over the lines of a connecting carrier, and such shipments were delivered by the defendant to the connecting carrier for that purpose. It also appears that the charges of the connecting carrier for this transfer were paid by the consignor to the defendant. The bill of lading recited that the defendant "agrees to carry to its usual place of delivery at said destination consigned to Marsh & Marsh, destination Omaha." The defendant having received compensation for this transfer when it accepted the goods for shipment, it follows that it undertook to cause this transfer to be made and the goods to be delivered at the place of business of the plaintiff. Under those circumstances, by the Carmack amendment, it is liable for any default of the connecting carrier.

2. The second question presented is as to the defendant's libility for an attorney's fee. Section 6063, Rev. St. 1913, provides: "In the event such claim, which shall have been filed as above provided within ninety days from the date of the delivery of the freight in regard to which damages are claimed, is not adjusted and paid within the time herein limited, such common carrier shall be liable for interest thereon at 7 per cent. per annum from the date of the filing of such claim, and shall also be liable for a reasonable attorney's fee to be fixed by the court." The trial court fixed an attorney's fee of $75. As this was an interstate shipment, and congress by the act of 1906 has provided the liability for loss or damage in interstate shipments, the states cannot add any liability for damage; and the question is whether this is an attempt to do so. If the attorney's fee is an additional burden upon interstate commerce, it cannot be allowed by the state. If it is merely a provision in regard to the local costs of the litigation, which was made

necessary by the delay of the defendant in adjusting the matter, it cannot be said to be a burden upon interstate commerce. The language of Mr. Justice Pitney in *Missouri, K. & T. R. Co. v. Cade,* 233 U. S. 642, which appears to be the unanimous opinion of that court, seems to justify the conclusion that under such circumstances an attorney's fee is properly taxable as a part of the costs of the case. That opinion says: "Manifestly, the purpose is merely to require the defendant to reimburse the plaintiff for a part of his expenses not otherwise recoverable as 'costs of suit.' * * * The outlay for an attorney's fee is a necessary consequence of the litigation, and since it must fall upon one party or the other, it is reasonable to impose it upon the party whose refusal to pay a just claim renders the litigation necessary. The allowance of ordinary costs of suit to the prevailing party rests upon the same principle." Although interstate commerce was not involved in that case, and the court was discussing other questions, the language used is so pertinent to the point involved here that, with some hesitation, I concur with the majority in holding that an attorney's fee was properly taxable by the court as a part of the costs in this case. In view of the fact that we have had various statutes in this state providing for attorney's fees, and that such statutes have universally been construed as dealing entirely with costs that may properly be taxed, it seems reasonable that this statute should also be so construed.

The decision of the supreme court of the United States in *Charleston & W. C. R. Co. v. Varnville Furniture Co.,* 237 U. S. 597, is not in conflict with this view. In that case, the statute of South Carolina made the liability of the last carrier extend "to losses on other roads in other jurisdictions and increases it by a fine difficult to escape;" whereas the Carmack amendment "requires the initial carrier to issue a through bill of lading and makes it liable for all damage anywhere on the route." This, the court say, "cannot be sustained as a help to the

federal statute because it goes farther than congress has seen fit to go;'' and the court refers to *Boston & Maine R. Co. v. Hooker,* 233 U. S. 97, and say: ''It is true that in that case the inclusion of the attorney's fee not exceeding $20 in the costs upon judgments for certain small claims was upheld, although incidentally including some claims arising out of interstate commerce. But apart from the effect being only incidental, the ground relied upon was that the statute did not 'in anywise enlarge the responsibility of the carrier' for loss or 'at all affect the ground of recovery, or the measure of recovery.' '' This seems to reaffirm the doctrine of the *Boston & Maine* case that the effect of taxing an attorney's fee as part of the costs is only incidental, and does not in anywise enlarge the responsibility of the carrier for loss, or at all affect the ground of recovery, or the measure of recovery. This is in harmony with the language above quoted from *Missouri, K. & T. R. Co. v. Cade,* 233 U. S. 642.

I, therefore, concur in the conclusion reached by the majority upon this point.

CORNISH, J., dissenting.

A law which requires a litigant to pay the attorney's fees of the opposing party if he is defeated, and which does not require the opposing party to pay his attorney's fees if he wins is in the nature of a law imposing a penalty. No other conclusion is reasonable. It would amount to a denial of the equal protection of the laws, unless enacted as a police regulation to prevent a common wrong in the refusal by carriers to entertain and pay just claims. I seriously doubt the existence of such customary wrong at the present time.

To me it is equally apparent that such a law must be a burden upon commerce. As a matter of business prudence, the common carrier will pay doubtful claims, small in amount, rather than run the risk of having finally to pay not only the claim, but, in addition thereto, an attorney's fee that may amount to more than the claim.

The result must be that in states having the law the emoluments going to the carrier for its service must be less than in those states not having the law.

It cannot be assumed that resistance of a claim is wrong, although it is finally upheld in court. Such presumption arises only by relation.

The law does not denominate the attorney's fees as costs. If it did, and the amount was limited and the right restricted, a different question might arise. This fact, it appears to me, distinguishes the case in hand from the federal cases cited. The statute uses the words, "reasonable fee.". The word "reasonable," under the previous decisions of this court, is hardly restrictive. If $100 worth of service is performed by the attorney in prosecuting a $10 or $25 claim, his reasonable fee is $100.