WILHELMINA SCHNEIDER, ADMINISTRATRIX, APPELLEE, V. JAMES C. DAVIS, APPELLANT: UNION STOCK YARDS COMPANY, APPELLEE.

FILED FEBRUARY 15, 1923. No. 22215.

1. **Carriers:** STOCK-YARDS COMPANY: LIABILITY. The liability of a stock-yards company as a common carrier begins upon its receipt of live stock from the railroad company at the transfer switch, and ends with its delivery to the consignee, unless by reason of such circumstances as unreasonable delay in acceptance, or other default on the part of the consignee, the relation changes to that of bailee.

2. ———: STATUTE: CONSTRUCTION. Under section 5415, Comp. St. 1922: "Whenever two or more railroads are connected together, the company owning either of such roads receiving freight to be transported to any place on the line of either of the roads so connected shall be liable as common carriers for the delivery of such freight to the consignee of the freight, in the same order in which such freight was shipped." This section applies to the carriage of live stock.

3. ———: LIABILITY. Under the evidence in this case, the Union Stock Yards Company was a common carrier of the live stock consigned, and the director general of railroads is liable as the carrier receiving the freight to be transported.

4. **Statutes:** CONTINUITY. The simultaneous repeal and reenactment of a law has the effect of continuing the uninterrupted operation of the statute.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Byron Clark, Jesse L. Root* and *J. W. Weingarten,* for appellant.

*A. H. Murdock* and *Brown, Baxter & Van Dusen, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN, ALDRICH and GOOD, JJ., RAPER, District Judge.

LETTON, J.

Plaintiff's decedent delivered to the director general of railroads at Rosalie, Nebraska, with other live stock,

31 hogs consigned to Bliss & Wellman at South Omaha. The car containing the shipment was delivered by the director general to the defendant Union Stock Yards Company. Twenty-six hogs only were delivered to the consignee by that company. This action is for the value of the missing hogs.

Bliss & Wellman, the consignee, controlled certain pens at the Union Stock Yards in Omaha. Cars loaded with live stock consigned to dealers at the Omaha market are delivered by the director general to the Stock Yards Company at a transfer track. From the transfer track these cars are transported by the company to the unloading chutes at the stock yards. From these chutes the live stock is driven through alley-ways to pens which are used by the different commission firms. The usual practice is to count the stock as it leaves the chutes, though sometimes the stock is accepted by the commission firms at the unloading chutes or in the alleys. Under section 5415, Comp. St. 1922, the initial carrier is responsible in the first instance for any loss occurring upon the line of the connecting carrier. The director general insists that the hogs were lost after they were taken from the pens at the unloading chute to be driven to the pens of the consignee; that after they left the chutes they were in possession of the Union Stock Yards Company as a bailee only, and not as a common carrier; that, consequently, the director general as the initial carrier is not liable for the loss. Upon the same day this shipment was received by the consignee, another shipment by a different consignor to another consignee had an excess of five head of hogs, which were delivered to the consignee of that shipment.

Appellant cites *Covington Stock Yards Co. v. Keith*, 139 U. S. 128, in support of the proposition that delivery to the unloading chutes terminates the relation of common carrier and its delivery to the consignee, but we find this language in the opinion in that case:

"When animals are offered to a carrier of live stock

to be transported, it is its duty to receive them; and that duty cannot be efficiently discharged, at least in a town or city, without the aid of yards in which the stock offered for shipment can be received and handled with safety, and without inconvenience to the public, while being loaded upon the cars in which they are to be transported. So, when live stock reach the place to which they are consigned, it is the duty of the carrier to deliver them to the consignee; and such delivery cannot be safely or effectively made except in or through inclosed yards or lots, convenient to the place of unloading. In other words, the duty to receive, transport, and deliver live stock will not be fully discharged unless the carrier makes such provision, at the place of loading, as will enable it to properly receive and load the stock, and such provision, at the place of unloading, as will enable it to properly deliver the stock to the consignee."

We agree with this statement of the law. The entire system of unloading chutes, alleys, gates, pens, etc., is designed for the express purpose of facilitating the forwarding and the receipt and delivery of live stock to the consignee, and form a part of the machinery of transportation. The liability of the Stock Yards Company begins with its receipt of the stock at the transfer switch, and ends with its delivery to the consignee, unless by reason of other circumstances, such as unreasonable delay in acceptance by the consignee, the relation changes to that of bailee. *Panhandle & S. F. R. Co. v. Crawford,* 198 S. W. (Tex. Civ. App.) 1079. We think there is nothing in the opinion in *Nye-Schneider-Fowler Co. v. Chicago & N. W. R. Co.,* 105 Neb. 151, and in the opinion of the supreme court of the United States in the same case, *Chicago & N. W. R. Co. v. Nye-Schneider-Fowler Co.,* 260 U. S. 35, 43 Sup. Ct. Rep. 55, inconsistent with these views. We hold, therefore, that the director general is liable for the nondelivery of the

stock, under the statute and the principles of the case last mentioned.

The action of the court in taxing an attorney's fee against the appellant is assigned as erroneous, for the reason that general order No. 50 of the director general, relating to actions against such official for damages to person or property being transferred by him, contains the proviso: "This order shall not apply to fines, penalties, and forfeitures." We have repeatedly held that an attorney's fee is not a fine, penalty, or forfeiture, but is in the nature of costs. *Marsh & Marsh v. Chicago & N. W. R. Co.*, 103 Neb. 654; *Nye-Schneider-Fowler Co. v. Chicago & N. W. R. Co.*, 105 Neb. 151; *Eckman Chemical Co. v. Chicago & N. W. R. Co.*, 107 Neb. 268. The decision of the supreme court of the United States in *Chicago & N. W. R. Co. v. Nye-Schneider-Fowler Co.*, 260 U. S. 35, is not inconsistent with this view.

The contention that no fee can be allowed because the act permitting such a fee was repealed by chapter 134, Laws 1919, before the fee was allowed, must also fail. The act of 1919 added the following words to the statute: "And in the event an appeal be taken and the plaintiff shall succeed, such plaintiff shall be entitled to recover an additional attorney fee to be fixed by such court or courts." This was the only change made. The simultaneous repeal and reenactment of all the other provisions of the law had the effect to continue the uninterrupted operation of the statute. *State v. McColl*, 9 Neb. 203; *State v. Bemis*, 45 Neb. 724; *Quick v. Modern Woodmen of America*, 91 Neb. 106; *Bauer v. State*, 99 Neb. 747.

The judgment is for $174.82. The district court allowed $100 as attorney's fee. In view of the liberal allowance made in the trial court, no attorney fee will be allowed here. *Eckman Chemical Co. v. Chicago & N. W. R. Co.*, 107 Neb. 268.

AFFIRMED.