**T.I.M.E.—DC, INC., Appellant,**

**v.**

**SOUTHWESTERN HISTORICAL WAX MUSEUM CORPORATION, Appellee.**

**No. 5457.**

Court of Civil Appeals of Texas, Waco.

Oct. 16, 1975.

Clifford, Sims & Kidd, Lubbock, for appellant.

Melton, Curtis & Shaw, Dallas, for appellee.

HALL, Justice.

This is an action by a consignee, Southwestern Historical Way Museum Corp., against a common motor freight carrier, T.I.M.E.—DC, Inc., for damage to a wax figure of an Indian Chief allegedly caused by the carrier, and for attorneys' fees. Trial to the court without a jury resulted in a judgment that the plaintiff recover $1,000 for damage to the wax figure and $350 for attorneys' fees.

The defendant delivered the wax figure from the manufacturer, in Vancouver, British Columbia, Canada, to the plaintiff's museum at Grand Prairie, Texas. The figure was concealed in a wooden crate. Upon receipt of the crate, the defendant executed a bill of lading in which it is stated that it received the crate "in apparent good order, except as noted (contents and condition of contents of packages unknown)." No exceptions were noted on the bill of lading. When the crate was opened at the museum, the figure was found to be irreparably broken at the neck, a shoulder, and an arm. It cannot be used in this condition.

In three points of error the defendant asserts (1) there is no evidence that the wax

figure was not damaged when it was delivered to the defendant and no evidence to support the trial court's express finding that the defendant's driver caused the damage; (2) the plaintiff was not entitled to attorneys' fees because this shipment was an interstate shipment; and (3) there is no evidence to support the award of attorneys' fees.

The plaintiff's executive vice-president, Lee Clisbee, was present when the crate was delivered to the museum, and when it was opened. He testified as follows: "The wax figure was mounted on plywood and was wrapped in a soft, cushion-type paper. In the crate, which was also made of plywood, the figure was completely covered with little styrofoam balls that look like peanuts to protect it from breakage. The packing was the same as with all wax figures and was adequate for protection in shipping. On arrival at the museum, the defendant's driver could not remove the crate from the defendant's truck because it was wedged across the back of the truck with other freight. It was wedged in there just as tight as a drum. The driver got a five-foot piece of two by four and began to attempt to dislodge the crate. He finally got it up under the crate and started trying to pry it out. He was bending that crate and it was popping and he could not get the crate out. It was popping like everything. You could hear lumber and everything else popping. The way he was bending that crate he was about to bust the crate open. He could not get it out. He finally—well, as a matter of fact, I stopped him. He was going to tear it up because he could not get it out. I told him, 'You're going to break everything in there all to pieces.' So, he had to go back to his warehouse to get it out. When he returned, it was loose and we were able to remove the crate. The figure is still in the crate it came in."

In the typical action by a consignee for in transit damage to freight by a carrier, there is no direct evidence that the carrier caused the damage. Without such evidence the consignee can establish a prima facie right of recovery circumstantially with proof and findings that the freight was delivered to the carrier in an undamaged condition and was then delivered by the carrier to the consignee in a damaged condition. See *Missouri Pacific Railroad Co. v. Elmore & Stahl*, (Tex.Sup., 1963) 368 S.W.2d 99, 101.

The testimony given by Mr. Clisbee stands undisputed and unimpeached in the record. It supports the trial court's finding that the damage to the wax figure was caused by the defendant's driver when he attempted to pry the crate loose in the truck. A common carrier is responsible for damage to freight proximately resulting from its negligence in unloading a shipment. 11 Tex.Jur.2d 175, Carriers, § 407. With the direct proof of damage by the defendant's agent, the plaintiff was not required to establish that the figure was undamaged when it was received by the defendant.

The plaintiff bases its claim for attorneys' fees on the part of Article 2226, Vernon's Tex.Civ.St., which permits such fees to any person who recovers a judgment on a claim for damaged freight. The plaintiff's attorney testified that he devoted more than eight hours rendering necessary services in several particulars, which we need not detail, preparing for trial. He said that a reasonable fee for these services and the trial is $450. This proof is legally sufficient to support the $350 award for attorneys' fees.

A carrier's liability for freight damage in transit on an interstate shipment is set and controlled by the Interstate Commerce Act, 49 U.S.C.A. § 20(11). This Act does not allow an award of attorneys' fees to a successful claimant. *Southwestern Mot. Tr. Co. v. Valley Weathermakers*, (Tex.Sup., 1968), 427 S.W.2d 597, 599. We agree with the defendant that the inter-

state shipment in question was "in transit" within the meaning of the Interstate Commerce Act until the wax figure was delivered to the plaintiff's possession, which was after the damage was done. See, Article 886, Vernon's Tex.Civ.St.; *Ex parte Kimberlin*, 126 Tex. 60, 86 S.W.2d 717, 720 (1935); *Sheppard v. Musser*, 127 Tex. 193, 92 S.W.2d 219, 222 (1936); *Caddell v. J. R. Watkins Medical Co.*, (Tex.Civ.App., San Antonio, 1921, no writ) 227 S.W. 226, 229; 80 A.L.R.2d 452. Accordingly, the plaintiff is not entitled to attorneys' fees.

The judgment is reformed by deleting therefrom the allowance for attorneys' fees. As reformed the judgment is affirmed.