HUMPHREY FEED & GRAIN, INC., A NEBRASKA CORPORATION, APPELLANT AND CROSS-APPELLEE, V. UNION PACIFIC RAILROAD COMPANY, A UTAH CORPORATION, APPELLEE AND CROSS-APPELLANT.

257 N. W. 2d 391

Filed August 17, 1977.  No. 41088.

Raymond M. Crossman, Jr., of Crossman, Barton & Norris, for appellant.

Daniel P. Morisseau, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.
This is an action by Humphrey Feed & Grain, Inc.

("Humphrey"), against Union Pacific Railroad Company for damages resulting from alleged losses of grain transported by the railroad for Humphrey; and for loss of profits allegedly caused by the railroad's failure to maintain in good repair a sidetrack which serves the premises leased to Humphrey by the railroad. The District Court granted summary judgment in favor of Union Pacific on Humphrey's claim for lost profits. Humphrey received a jury verdict on its claim for damages resulting from losses of grain, and the trial court denied Humphrey interest or attorney's fees on its judgment. Humphrey has appealed from the summary judgment granted to the railroad, and from the denial of interest and attorney's fees on the judgment. Union Pacific has cross-appealed from the judgment in Humphrey's favor on the ground a verdict should have been directed. We affirm the judgment for Humphrey for damages for loss of grain, and also the denial of interest and attorney's fees. We vacate, with instructions, the summary judgment granted in favor of Union Pacific on the claim for lost profits.

In its petition, Humphrey alleged that between October 1, 1971, and December 31, 1974, it had delivered to the railroad 121 carloads of grain for shipment, and had received a bill of lading for each car which reflected the number of pounds of grain loaded aboard each car. Plaintiff alleged that each carload of grain was delivered by the defendant or a connecting carrier to a point of destination with a shortage of grain in excess of generally accepted shrinkage. Humphrey alleged that the railroad is subject to the provisions of the Carmack Amendment, Title 49 U. S. C. A., § 20, par. (11); and it was liable to Humphrey thereunder for the loss of the grain in excess of normal shrinkage. Humphrey further alleged that it had filed claims with the railroad for the alleged losses within the time provided by section 74-715, R. R. S. 1943; that the claims were not

adjusted or paid by the railroad within the specified time period; and that it was therefore entitled to interest and reasonable attorney's fees under that section. Humphrey prayed for judgment against the railroad in the amount of $21,677.36, plus interest and attorney's fees.

In a separate cause of action, Humphrey alleged that it was the lessee of a portion of the railroad's right-of-way, and that there is an implied covenant under the lease that the railroad would keep its sidetrack, which serves the leased premises, in such a state of repair and maintenance so as to provide Humphrey with full and satisfactory shipping facilities. Humphrey also alleged that the railroad had a statutory duty to keep the sidetrack in repair under section 74-503, R. R. S. 1943. Humphrey alleged that the railroad has failed to maintain the sidetrack in good repair during the period from September 1, 1972, through December 31, 1974; that only three cars could be "spotted" on the sidetrack due to the disrepair; that the railroad failed to make necessary repairs despite oral demands by Humphrey; and that Humphrey received approximately 130 cars less on the average than his competitors as a result of the disrepair of the sidetrack. Humphrey prayed for a judgment against the railroad in the amount of $91,000 for lost profits incurred as a result of the alleged failure of the railroad to maintain its sidetrack in good repair.

In its answer, Union Pacific denied the shortages of grain and its liability on Humphrey's claim for damages. The railroad admitted the existence of the lease, but denied it had failed to keep the sidetrack in good repair, and denied the allegation of lost profits. Union Pacific filed a motion to dismiss the claim for lost profits on the ground that the subject matter of that claim was outside the jurisdiction of the District Court, but that motion appears not to have been ruled on by the trial court. The railroad

also moved for summary judgment on the claim for lost profits, and that motion was sustained by the District Court. As previously stated, Humphrey received a jury verdict and judgment in its favor on its claim for damages incurred as the result of grain losses, but the trial court denied interest and attorney's fees on that judgment.

We first examine the contentions of the parties in regard to the judgment in Humphrey's favor on its claim for damages resulting from grain losses. The facts adduced at trial are as follows.

From October 1, 1971, through December 31, 1974, Humphrey delivered 118 carloads of grain to the railroad for shipment. Three claims for 121 carloads originally filed were withdrawn prior to or during the trial. The cars were "spotted" by the railroad on the sidetrack which serves Humphrey's business, and were loaded by Humphrey. In loading the cars, Humphrey uses a "dump" scale, which is a balance scale governed by a 560 or 600 pound weight. Grain is loaded into the scale, which automatically dumps the grain when the 560 or 600 pound weight limit is reached. A counter is automatically tripped when each dump occurs so that the number of dumps is recorded.

After a car is loaded, the railroad is notified, and its agent seals the car. The agent prepares a bill of lading, and in so doing uses the weight figure provided by Humphrey. After the grain reaches its destination, an account of sales is sent to Humphrey, which shows the weight at destination. The bills of lading and the account of sales regarding the 118 shipments involved in this case were received in evidence, and showed that the weight at destination was less than the weight at origin, taking into account the tariff of normal shrinkage of 1/8 of 1 percent, on the 118 shipments.

In support of the contention that the dump scale was accurate, Humphrey's owner testified that the

weights arrived at by using the dump scale compared with weights recorded on Humphrey's truck scale. Such comparisons were made when a grain producer delivered grain to Humphrey in a truck and the grain was weighed on the truck scale. When the grain was immediately loaded on railroad cars via the dump scale, the truck scale weight could be compared to the dump scale weight. The truck scale was inspected annually by the State of Nebraska, and passed inspections for accuracy.

Humphrey also introduced evidence that one of its customers, who had a truck too large for its truck scale, would load grain on the truck via the dump scale, and the weight would be checked by weighing the truck at a scale of another elevator. Comparisons between the dump scale weight and the weight recorded on the scale of the other elevator were favorable.

Humphrey's owner testified that he had filed claims with the railroad on the 118 shipments within 90 days of settlement, which was the time he was told what the weight at destination was, and that the claims were not adjusted or paid by the railroad.

A professor who was an expert in grain science testified on behalf of Union Pacific. In summary, his testimony was that grain loses weight during shipment due to loss of moisture, and that the amount of weight loss depends on the water content of the grain and the humidity. Another expert witness, a supervisor of weights, testified that dump scales are not regarded as accurate scales in the industry. Evidence was adduced to the effect that dump scales are inaccurate if not properly maintained and kept in good repair. An analysis of Humphrey's records indicated that, during the relevant time period, 33 percent of its shipments were overweight, 61 percent were underweight, and 6 percent were even, when Humphrey's dump scale weights were compared to the destination weights. The evi-

dence also showed that Humphrey's dump scale was not cleaned and inspected in accordance with the recommendations of the manufacturer of the scale.

Union Pacific contends that the trial court erred as a matter of law in overruling its motion for a directed verdict at the close of all the evidence, and in overruling its motion for judgment notwithstanding the verdict. In so arguing, the railroad relies on the rule that the trial court should direct a verdict when there is not sufficient evidence upon which a jury can properly proceed to find a verdict in favor of the party upon whom the burden of proof is imposed. See Moats v. Leinemann, 188 Neb. 452, 197 N. W. 2d 377 (1972). In this case, however, we believe there was sufficient evidence upon which the jury could proceed to find in favor of Humphrey.

A motion for a directed verdict must be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; and such a party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably be deduced from the evidence. Laux v. Robinson, 195 Neb. 601, 239 N. W. 2d 786 (1976). This court will not interfere with the findings of a jury on a fact question unless the preponderance of the evidence is so clearly and obviously contrary to the findings that it is the duty of the reviewing court to correct the mistake. Dort v. Swift & Co., 193 Neb. 606, 228 N. W. 2d 588 (1975). Under these rules, the question presented is whether the evidence, and reasonable inferences therefrom, was sufficient for the jury to find by a preponderance of the evidence that grain losses occurred during the shipments.

Humphrey's claim was brought under Title 49 U. S. C. A., § 20, par. (11), which provides that a railroad is liable for loss of property caused by it. In actions by a shipper against a carrier for lost goods, a prima facie case is made out when the shipper

shows delivery of a quantity of goods to the carrier; arrival at destination of a lesser quantity, taking into account normal losses inherent in goods such as grain due to loss of moisture; and the amount of damages. See, Missouri Pacific R. R. Co. v. Elmore & Stahl, 377 U. S. 134, 84 S. Ct. 1142, 12 L. Ed. 2d 194 (1964); Nye-Schneider-Fowler Co. v. Chicago & N. W. R. R. Co., 106 Neb. 149, 182 N. W. 967 (1921). The question of the correctness of weights is for the jury and is a fact which the shipper must prove by a preponderance of the evidence. Nye-Schneider-Fowler Co. v. Chicago & N. W. R. R. Co., *supra.* Where the bill of lading reflects the shipper's weight and load count, the weight listed on the bill of lading is not, in and of itself, sufficient evidence of the quantity of goods delivered by the shipper to the carrier. Dublin Co. v. Ryder Truck Lines, 417 F. 2d 777 (5th Cir., 1969). In such a case the shipper must produce further evidence of the quantity of goods delivered to the carrier.

In this case Humphrey produced not only the bills of lading, but also evidence in regard to the accuracy of its dump scale, and testimony that the weight reflected on the bills of lading was in fact the weight of the grain loaded in the railroad cars. Union Pacific introduced evidence that the dump scale was inaccurate, and that it had not been properly maintained and cleaned. The evidence clearly raised a fact question for the jury, and the evidence introduced by Humphrey was sufficient for the jury to find by a preponderance of the evidence that the quantity of grain Humphrey delivered to the railroad was the quantity reflected on the bills of lading. Therefore, it was proper for the trial court to overrule Union Pacific's motions for a directed verdict and for judgment notwithstanding the verdict; and the railroad's contention to the contrary is without merit.

We next turn to the question of whether the Dis-

trict Court erred in denying Humphrey interest from the date of its claims against the railroad and reasonable attorney's fees on its judgment for damages resulting from losses of grain. It is uncontroverted that the shipments were interstate shipments, and that Union Pacific's liability for losses is governed by Title 49 U. S. C. A., § 20, par. (11), known as the Carmack Amendment, which imposes liability of a carrier for the full actual loss, damage, or injury to property of the shipper. With the enactment of the Carmack Amendment, Congress superseded diverse state laws with a national uniform policy governing interstate carriers' liability for property loss, and the federal law governs liability for loss or damage. New York, N. H. & H. R. R. Co. v. Nothnagle, 346 U. S. 128, 73 S. Ct. 986, 97 L. Ed. 1500 (1953); Sweeney v. Morgan Drive Away, Inc., 394 F. Supp. 1216 (D. Colo., 1975); Vacco Industries v. Navajo Freight Lines, Inc., 63 Cal. App. 3d 262, 133 Cal. Rptr. 628 (1976). The federal law does not authorize the allowance of attorney's fees in an action for loss or damage to property in shipment. Atlantic Coast Line R. R. Co. v. Riverside Mills, 219 U. S. 186, 31 S. Ct. 164, 55 L. Ed. 167 (1911); Sutherland v. Ringsby Truck Lines, Inc., 549 P. 2d 784 (Colo. App., 1976); T. I. M. E.—DC, Inc. v. Southwestern Historical Wax Museum Corp., 528 S. W. 2d 901 (Tex. Civ. App., 1975).

Although there is no provision in the Carmack Amendment providing for recovery of interest or attorney's fees on loss or damage to property, section 74-715, R. R. S. 1943, provides: "Every claim for loss or damage to property in any manner, or overcharge for freight for which any common carrier in the State of Nebraska may be liable, shall be adjusted and paid by the common carrier delivering such freight at the place of destination within sixty days, in cases of shipment or shipments wholly within the state, and within ninety days in cases of

shipment or shipments between points without and points within the state, after such claim, stating the amount and nature thereof, accompanied by the bill of lading or duplicate bill of lading or shipping receipt, showing the amount paid for or on account of such shipment, which shall be returned to the complainant when the claim is rejected or the time limit has expired, shall have been filed with the agent of the common carrier at the point of destination of such shipment, or at the point where damages in any other manner may be caused by any common carrier. In the event such claim, which shall have been filed as above provided within ninety days from the date of the delivery of the freight in regard to which damages are claimed, is not adjusted and paid within the time herein limited, such common carrier shall be liable for interest thereon at seven per cent per annum from the date of filing of such claim, and shall also be liable for a reasonable attorney's fee, to be fixed by the court, all to be recovered by the consignee or consignor, or real party in interest, in any court of competent jurisdiction; and in the event an appeal be taken and the plaintiff shall succeed, such plaintiff shall be entitled to recover an additional attorney's fee, to be fixed by such court or courts; Provided, in bringing suit for the recovery of any claim for loss or damage, as herein provided, if the consignee or consignor, or real party in interest, shall fail to recover a judgment in excess of the amount that may have been tendered in an offer of settlement of such claim by the common carrier liable hereunder, then such consignee or consignor, or real party in interest shall not recover the interest penalty or attorney's fees herein provided.'' Humphrey contends that it is entitled to interest from the date of its claim and attorney's fees under section 74-715, R. R. S. 1943. Union Pacific contends that Congress has preempted the field of law concerning interstate carriers' liability for property loss, and

that therefore section 74-715, R. R. S. 1943, may not constitutionally be applied in cases involving interstate commerce.

It is clear that the District Court was correct in denying Humphrey interest from the date of filing its claims. An award of interest is in the nature of damages. 22 Am. Jur. 2d, Damages, § 179, p. 256. The Carmack Amendment does not provide for an award of interest from the date of filing a claim, and, as stated previously, it governs liability for loss or damage to property in interstate shipments. Humphrey cites no authority to support its proposition that interest is merely a cost of litigation, and that interest from the date of filing a claim may be awarded under a state statute such as section 74-715, R. R. S. 1943, in cases governed by the Carmack Amendment. The interest provisions of section 74-715, R. R. S. 1943, cannot be applied in cases involving interstate shipments, as Congress has preempted the field with a national uniform policy governing interstate carriers' liability for property loss or damage.

The question of whether the District Court erred in denying Humphrey reasonable attorney's fees under section 74-715, R. R. S. 1943, raises additional questions. In Marsh & Marsh v. Chicago & N. W. Ry. Co., 103 Neb. 654, 173 N. W. 679 (1919), this court held that the provisions regarding attorney's fees in section 6063, R. S. 1913, now section 74-715, R. R. S. 1943, could be applied in cases involving an interstate shipment, stating: "The statute under consideration provides for the allowance of attorney's fees in all cases where claims for loss or damage for which a common carrier may be liable shall not be adjusted and paid within a fixed period. By this statute no attempt is made to regulate interstate commerce. Neither is the imposition of attorney's fees to be considered as a penalty; rather it is to be considered as a part of the costs incurred in the ac-

tion, although not so denominated in the statute. The allowance is clearly in the nature of costs. It is not a fixed sum to be recovered as a part of the judgment, but its amount is to be fixed by the court.'' See, also, Schneider v. Davis, 109 Neb. 638, 192 N. W. 230 (1923); Eckman Chemical Co. v. Chicago & N. W. Ry. Co., 107 Neb. 268, 185 N. W. 444 (1921). Unless the decisions in Marsh & Marsh v. Chicago & N. W. Ry. Co., *supra,* and later cases were erroneous and should be overruled, the District Court erred in denying Humphrey reasonable attorney's fees under section 74-715, R. R. S. 1943.

The Supreme Court of the United States has not specifically ruled on the validity of state statutes like section 74-715, R. R. S. 1943, but the case of Missouri, Kansas & Texas Ry. Co. of Texas v. Harris, 234 U. S. 412, 34 S. Ct. 790, 58 L. Ed. 1377 (1914), is relevant. That case involved the validity of a Texas statute which permitted recovery of attorney's fees, relating to the collection of claims not exceeding $200, in amount against any person or corporation doing business in Texas for personal services rendered or for labor done, for material furnished, or for any claim for lost or damaged freight. The court found that the statute was a police regulation designed to promote the prompt payment of small but well-founded claims, and that it had a broad sweep which only incidentally included claims arising out of interstate commerce. The court concluded that it did not directly burden interstate commerce, and that therefore it was not repugnant to the commerce clause of the Constitution or in conflict with federal law concerning interstate carriers. It was there stated: ''The local statute, as already pointed out, does not at all affect the ground of recovery, or the measure of recovery; it deals only with a question of costs, respecting which Congress has not spoken. Until Congress does speak, the State may enforce it in such a case as the present.''

Subsequent to the Harris case, Texas amended its statute so that it is now similar to section 74-715, R. R. S. 1943. In Thompson v. H. Rouw Co., 237 S. W. 2d 662 (Tex. Civ. App., 1951), the court held that attorney's fees could not be awarded under the new Texas statute in cases involving property loss in interstate shipments. The court noted that the Harris case turned on the fact that the old Texas statute permitted a nominal and limited fee on small claims. The court found that the rule in Harris was not applicable to the new Texas statute, and that Texas could not extend an interstate carrier's liability for losses beyond the damages recoverable under the Carmack Amendment. Thompson v. H. Rouw Co., *supra*, was approved by the Supreme Court of Texas in Southwestern Motor Transport Co., Inc. v. Valley Weathermakers, Inc., 427 S. W. 2d 597 (Tex., 1968). Florida also has a statute similar to section 74-715, R. R. S. 1943, and Florida courts have also held that attorney's fees may not be recovered under that statute in cases involving interstate shipments. See Allied Van Lines, Inc. v. Brewer, 258 So. 2d 496 (Fla. App., 1972). Nebraska appears to be the only state which has permitted recovery of attorney's fees in cases brought under the Carmack Amendment. See Annotation, 37 A. L. R. 3d 1125.

In Chicago & N. W. Ry. Co. v. Nye Schneider Fowler Co., 260 U. S. 35, 43 S. Ct. 55, 67 L. Ed. 115 (1922), section 6063, R. S. 1913, now section 74-715, R. R. S. 1943, was challenged on the ground that its provision awarding attorney's fees violated the constitutional guarantees of due process and equal protection. Although that case involved an intrastate shipment, and did not involve the issue of preemption as raised in the present case, the court's characterization of attorney's fees is relevant. The court upheld the statute against attack on due process and equal protection grounds, stating that common carriers may be required to meet their duties in regard to prompt

payment of a valid claim, and "that a reasonable *penalty* may be imposed on them for failure to promptly consider and pay such claim, in order to discharge delays by them. This penalty may be in the form of attorney's fees." (Emphasis supplied.) It is clear that the court viewed an award of attorney's fees under section 74-715, R. R. S. 1943, as a penalty, and not simply as a cost of litigation.

The above authorities indicate that the rationale underlying Marsh & Marsh v. Chicago & N. W. Ry. Co., *supra,* is no longer valid. Section 74-715, R. R. S. 1943, in effect imposes a penalty on carriers who violate its provision requiring that carriers adjust and pay claims within 90 days of an interstate shipment. The award of attorney's fees under section 74-715, R. R. S. 1943, has been characterized as a penalty by the United States Supreme Court in Chicago & N. W. Ry. Co. v. Nye Schneider Fowler Co., *supra.* Section 74-715, R. R. S. 1943, is not limited to recovery of nominal attorney's fees on small claims, but purports to apply to all interstate shipments regardless of the size of the claim. The Texas and Florida cases discussed above are persuasive that section 74-715, R. R. S. 1943, may not be constitutionally applied to interstate shipments. Therefore, insofar as Marsh & Marsh v. Chicago & N. W. Ry. Co., *supra,* and later cases hold that attorney's fees may be recovered in cases involving *interstate* shipments, they are overruled. The District Court was correct in denying Humphrey attorney's fees and interest under section 74-715, R. R. S. 1943, in this case.

The final question for resolution is whether the District Court erred in granting summary judgment in favor of Union Pacific on Humphrey's claim for lost profits. Humphrey contends that the railroad has a duty to repair the sidetrack which serves its premises under the common law, the Constitution and statutes of Nebraska, and an implied covenant of the lease of part of the railroad right-of-way to

Humphrey from Union Pacific. Union Pacific contends that it is under no duty to construct or maintain sidetracks to suit the needs and uses of individual shippers located along its lines, absent a special agreement or contract; and that the Interstate Commerce Commission has exclusive primary jurisdiction of Humphrey's claim.

Although Humphrey devotes its argument to the duty of a railroad to maintain public sidetracks located on the railroad right-of-way, resolution of the question raised by Humphrey's claim for lost profits requires an examination of the specific allegations in its petition. Humphrey alleged that from 1972 to 1974 the railroad "permitted its side track servicing plaintiff's place of business to get in such a state of disrepair that only three cars could be spotted on said side track at one time. Plaintiff, on many occasions, made oral demands on defendant's agents to repair said side track; but defendant failed and refused to make the necessary repairs. During said period and because of the state of disrepair of defendant's side track, plaintiff received approximately 130 cars less on the average than other grain elevator operators at Monroe, Platte Center, Tarnov and Farmer's Elevator in Humphrey, Nebraska." Humphrey alleged that it lost profits of $700 per car, praying for total damages of $91,000

Although Humphrey has cast its claim in terms of the alleged failure of the railroad to repair its sidetrack, the essence of its claim is that the railroad did not afford reasonable and equal terms, service, facilities, and accommodations to all persons engaged in the operation of grain elevators; and did not afford reasonable car service to Humphrey because of the limited number of cars that could be spotted on the sidetrack. Humphrey's suit is not one in equity to require the railroad to repair the sidetrack, nor does it involve the power of the Nebraska Public Service Commission to require a carrier to repair its equip-

ment under certain conditions. See § 75-115, R. R. S. 1943. Therefore the primary question is not simply whether the railroad has a duty to repair the side-track, but whether Humphrey may maintain an action for lost profits in the courts of this state on the ground that the railroad discriminated against Humphrey in regard to facilities and car service by permitting a sidetrack to fall in disrepair. For the reasons that follow, we conclude that Humphrey may not maintain such an action in the courts of this state because the Interstate Commerce Commission has primary jurisdiction of such a claim.

The provisions of the Interstate Commerce Act, Title 49 U. S. C. A., Ch. 1, et seq., apply to common carriers engaged in the transportation of passengers or property by railroads in interstate commerce. Section 1, par. (4), requires that it shall be the duty of every common carrier to provide and furnish transportation upon reasonable request therefor. Section 3 prohibits common carriers from giving undue or unreasonable preference or advantage to any particular person or company. Section 1, par. (11), provides that it shall be the duty of every carrier to furnish safe and adequate car service and to establish just and reasonable practices with respect to car service. Under section 8 of the act, a common carrier shall be liable to any person for the full amount of damages sustained in consequence of any violation of the provisions of the act. Section 9 provides that any person claiming to be damaged by any common carrier under the act may either make complaint to the Interstate Commerce Commission, or may bring suit in its behalf for the recovery of damages in any District Court of the United States of competent jurisdiction. Although the Interstate Commerce Act establishes comprehensive rights and duties of interstate carriers and gives the Interstate Commerce Commission and the federal courts jurisdiction of all suits for damages under sections 8

and 9, federal courts do not have exclusive jurisdiction of claims against interstate carriers. Section 22 of the act provides that "nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies; * * *." Therefore, the act "did not supersede the jurisdiction of state courts in any case, new or old, where the decision did not involve the determination of matters calling for the exercise of the administrative power and discretion of the Commission; or relate to a subject as to which the jurisdiction of the Federal courts had otherwise been made exclusive." Pennsylvania R. R. Co. v. Puritan Coal Mining Co., 237 U. S. 121, 35 S. Ct. 484, 59 L. Ed. 867 (1915). See, also, Union Transfer Co. v. Renstrom, 151 Neb. 326, 37 N. W. 2d 383 (1949).

Section 74-513, R. R. S. 1943, provides: "Every railroad corporation shall give to all persons and associations fair, equal, prompt and impartial service and accommodations in furnishing, delivering and transporting cars, and in delivering and transporting commodities, merchandise, produce, and other property, without discrimination or favoritism, whether the industry receiving or shipping commodities, merchandise, produce, or other property, or the sidetracks by which it is served, is located on or off such railroad company's right-of-way." See, also, section 74-503, R. R. S. 1943, which requires railroads to afford reasonable and equal facilities to persons engaged in the operation of grain elevators. Insofar as Humphrey's claim rests on the common law and the statutes of Nebraska, its claim is essentially one of discrimination in facilities under sections 74-513 and 74-503, R. R. S. 1943. A charge of unlawful discrimination on the part of a common carrier may be predicated upon the furnishing to some patrons of services or facilities which are unjustifiably denied to others. 13 Am. Jur. 2d, Carriers, §

198, pp. 717, 718. Since the Interstate Commerce Act has not superseded the jurisdiction of state courts generally, Humphrey was entitled to bring its claim in the District Court, but only if a decision would not involve "matters calling for the exercise of the administrative power and discretion of the Commission; or relate to a subject as to which the jurisdiction of the Federal courts had otherwise been made exclusive." Pennsylvania R. R. Co. v. Puritan Coal & Mining Co., *supra*. Union Pacific does not contend that the subject matter of Humphrey's claim for lost profits has been made exclusive in the Interstate Commerce Commission and that Congress has preempted the field. It does, however, contend that the doctrine of primary jurisdiction applies.

The primary jurisdiction doctrine applies whenever enforcement of a claim, originally cognizable in the courts, requires the resolution of issues that have been placed within the special competence of an administrative body in accordance with the purposes of a regulatory scheme. Whether the purposes of the Interstate Commerce Act require that the Interstate Commerce Commission should first pass on a question depends on whether the question raises issues of transportation policy that should be considered by the commission in the interests of uniformity and administrative expertise. See, United States v. Western Pacific R. R. Co., 352 U. S. 59, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956); Interstate Commerce Commission v. Baltimore & Annapolis R. R. Co., 398 F. Supp. 454 (D. Md., 1975); Interstate Commerce Commission v. Maine Central R. R. Co., 505 F. 2d 590 (2d Cir., 1974); Hewitt v. New York, N. H. & H. R. R. Co., 284 N. Y. 117, 29 N. E. 2d 641 (1940). Preliminary resort to the Interstate Commerce Commission is required where the inquiry is essentially one of fact and of discretion in technical matters and when uniformity can only be secured if determination is made by that Commission. Agri-

cultural Services Assn., Inc. v. Commonwealth, 210 Va. 506, 171 S. E. 2d 840 (1970). The Interstate Commerce Commission must make the initial determination as to whether rail service is reasonable. Elgin Coal Co. v. Louisville & Nashville R. R. Co., 411 F. 2d 1043 (6th Cir., 1969). Allegations of discriminatory car service, for example, fall squarely within the policy of primary jurisdiction of the Interstate Commerce Commission. Taylor County Sand Co. v. Seaboard Coast Line R. R. Co., 446 F. 2d 853 (5th Cir., 1971). The effect of the application of the doctrine of primary jurisdiction is to preclude resort to the courts in the first instance, or to preclude the court from supplying a remedy, or passing upon particular issues until the issues have been passed upon by the administrative agency. 2 Am. Jur. 2d, Administrative Law, § 795, p. 699; Davis, Administrative Law of the Seventies, § 19.01, p. 435 (1976).

Humphrey contends that the doctrine of primary jurisdiction is not applicable in this case because the issue presented is only a legal one of whether the railroad had the duty to maintain its public sidetrack. It contends that the issue is not one of fact calling for the exercise of administrative discretion or expertise, and that therefore the doctrine of primary jurisdiction should not apply. See Great Northern Ry. Co. v. Merchants Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943 (1922).

We believe that this contention is erroneous. It is the general rule that a railroad has a duty under its state franchise to maintain and repair its lines and provide service thereon. Interstate Commerce Commission v. Maine Central R. R. Co., *supra;* Bivins v. Southern Ry. Co., 247 N. C. 711, 102 S. E. 2d 128 (1958). A railroad's duty to operate and maintain its lines is based on its obligation to properly provide services to the public impartially, without discrimination for or against persons demanding similar services. See 74 C. J. S., Railroads, § 124 a,

p. 557, § 390, p. 939. Whether or not a railroad has a duty to maintain a spur track or sidetrack depends on whether the track benefits only private interests, or whether the track has become part of the main line and is to serve the public at large. See, Alton R. R. Co. v. Illinois Commerce Commission, 305 U. S. 548, 59 S. Ct. 340, 83 L. Ed. 344 (1938); 74 C. J. S., Railroads, § 124 b, p. 558. The question of whether Union Pacific had a duty to repair the sidetrack in this case, however, is not, in and of itself, dispositive of Humphrey's claim. Even assuming, without deciding, that the railroad was under a duty to maintain the sidetrack as part of its main line, a determination of whether Humphrey is entitled to lost profits involves the question of whether the sidetrack facilities in fact provided it by Union Pacific were reasonable and nondiscriminatory as compared to those facilities made available to the public at large, and particularly to Humphrey's competitors. The nature of the controverted question and the nature of the inquiry necessary for its solution is the determining factor in regard to application of the doctrine of primary jurisdiction. Great Northern Ry. Co. v. Merchants Elevator Co., *supra.* Humphrey's claim in this case involves the question of whether rail service and facilities provided by an interstate carrier were reasonable and nondiscriminatory, and raises factual questions which can best be determined by the Interstate Commerce Commission due to its expertise and ability to establish uniform rules concerning the reasonableness of facilities provided by interstate carriers. Therefore it would appear that the doctrine of primary jurisdiction applies in this case, and Humphrey must pursue its claim before the Interstate Commerce Commission.

Humphrey's claim for lost profits was also based on the allegation that there is an implied covenant in its lease that the railroad would keep its sidetrack in such a state of repair and maintenance so as to pro-

vide Humphrey with full and satisfactory shipping facilities. Such an allegation is without merit in this case. Although Humphrey sets forth the general rules in regard to implied covenants in its brief, it cites no cases which hold that such a covenant may be implied in a lease of land by a railroad to the operator of a grain elevator, and we have found none. The lease is silent in regard to the sidetrack. Although Humphrey was entitled to expect the railroad to conform to the applicable laws concerning its duties to provide reasonable facilities to Humphrey on a nondiscriminatory basis, such duties cannot be elevated to the status of an implied covenant in the lease. Absent a contract between Humphrey and the railroad in regard to the sidetrack, the railroad's duties with respect to the sidetrack are only those required by law, and not ones of an implied covenant.

We note that the District Court granted summary judgment in favor of Union Pacific on Humphrey's claim for lost profits. In view of our holding that the doctrine of primary jurisdiction applies in this case, the District Court should not have resolved the issues raised by Humphrey's claim for lost profits under the common law and the law of Nebraska. Therefore we vacate the summary judgment granted in favor of Union Pacific on Humphrey's claim for lost profits under the common law and Nebraska law, as the District Court should have deferred jurisdiction on that issue to the Interstate Commerce Commission. We affirm the judgment in favor of Humphrey on its claim for damages resulting from grain losses, and affirm the denial of interest from the date of its claims, and attorney's fees.

AFFIRMED IN PART, AND IN PART VACATED.

CLINTON and WHITE, C. THOMAS, JJ., concur in the result.

BOSLAUGH, J., dissenting in part.

I dissent from that part of the majority opinion which vacates the summary judgment for the de-

fendant on the cause of action for lost profits.

The petition alleged the defendant had violated "its statutory and contractual duties" to keep the sidetrack "servicing plaintiff's place of business" in repair. There was no allegation that the public or any person other than the plaintiff had been injured by the defendant's failure to repair the sidetrack. There was no issue as to whether the defendant had failed to provide adequate and suitable sidetracks for public use in Humphrey, Nebraska.

The plaintiff's right to recover depended upon proof that the defendant had breached a duty which it owed to the plaintiff. Unless the plaintiff could establish that the defendant owed a duty to the plaintiff to maintain the sidetrack in good repair, the plaintiff could not recover damages resulting from the failure to repair the sidetrack. In my opinion the primary issue here was whether the defendant owed a duty to the plaintiff to repair the sidetrack.

The petition alleged that the defendant had both a contractual duty and a statutory duty to the plaintiff to repair the sidetrack. The record shows conclusively that the defendant had no contractual duty to repair the sidetrack.

To establish a statutory duty the plaintiff relied upon section 74-503, R. R. S. 1943, which requires railroads operating in Nebraska to "afford reasonable and equal terms, service, facilities and accommodations" to all shippers. The railroads, however, are not required to furnish such facilities free of cost to the shippers. In Missouri Pacific Ry. Co. v. Nebraska, 217 U. S. 196, 30 S. Ct. 461, 54 L. Ed. 727, a statute requiring railroads to construct and maintain sidetracks at their expense to serve elevators constructed on the right-of-way was held invalid.

Sections 74-504 and 74-508, R. R. S. 1943, provide a remedy for shippers who want a sidetrack constructed and maintained on the right-of-way adjacent to and opposite an industry. Under these sec-

tions the shipper may be required to share in the cost of constructing and maintaining the sidetrack. The plaintiff did not attempt to proceed under these sections.

I would affirm the summary judgment for the defendant on the cause of action for lost profits.

SPENCER, J., joins in this dissent.